PEOPLE ex rel. BROOKLYN CHILDREN'S AID SOCIETY v. HENDRICKSON et al.

(Supreme Court, Appellate Division, Second Department.   March 11, 1908.)

SCHOOLS AND SCHOOL DISTRICTS—PUPILS—ELIGIBILITY—RESIDENCE.

 School Law, Laws 1894, p. 1225, c. 556, tit. 7, § 36, provides that common schools shall be free to minors residing in the district; nonresidents to be admitted on terms prescribed by the trustees.   Section 11 (page 1212) declares that every person, not being a parent, who shall have permanently residing with him or her a child or children of school age, some one or more of whom shall have attended the district school for a period of

at least eight weeks within a year preceding a school meeting, shall be entitled to vote, and section 59 (page 1234) requires the trustees to report the number of children residing in the district on the 30th of June preceding the report, and the names of the parents or other persons with whom the children reside, etc. Section 60 (page 1234) declares that an annual report of the trustees shall include all children over 5 years and under 21 who shall have been, on the 30th of June last preceding the date of the report, actually in the district, comprising a part of the family of their parents, guardians, or employers, although their residence was temporary, but that the report should not include children supported in any county poorhouse or orphan asylum, etc. Compulsory Education Law, Laws 1894, p. 1683, c. 671, § 3, requires regular school attendance by every child between 8 and 16 years of age, of proper physical and mental condition, and section 2 (page 1682) defines the term "persons in parental relation to a child," to include persons lawfully having the care, custody, and control of such child. *Held*, that where an orphan child was placed in the family of a resident of defendant school district for care by a children's aid society, which paid for his board and clothing, and the child was treated in all respects as a member of the family, he was a resident of the district and entitled to free school privileges.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Schools and School Districts, § 325.]

Appeal from Special Term.

Mandamus by the people, on relation of the Brooklyn Children's Aid Society, to compel George C. Hendrickson and others, constituting the board of education of the Huntington union school, to receive for instruction in such school, without the payment of tuition, an orphan child claimed to be a resident of the school district. From an order directing a peremptory writ (54 Misc. Rep. 337, 104 N. Y. Supp. 122), defendants appeal. Affirmed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Thomas Young, for appellants.

William G. Cooke (Howard O. Wood, on the brief), for respondent.

HOOKER, J. The only question involved upon this appeal is whether or not the child Wisbauer is a resident of the school district in question, as the term "resident" is used in the school law. It is evidently a mixed question of law and fact, and its decision necessitates the review of the facts as developed upon the trial of this alternative writ of mandamus.

In the month of March, 1902, Wisbauer was left an orphan by the death of his mother; his father had died when he was an infant. Within a day or two of his mother's death his brother delivered him into the care of the Brooklyn Children's Aid Society. This society was organized in February, 1866. The certificate of incorporation stated in detail its object and purposes. One of these was the establishment of one or more homes or lodging houses for children in the city of Brooklyn. There has been since the year 1902 no such home or lodging house in Brooklyn maintained by the corporation. The certificate of incorporation likewise stated that one of the purposes of the corporation was the protection, care, and shelter of homeless and vagrant youth, furnishing them with food, raiment, and lodging, administering to their wants, providing them with occupation, in-

structing them in moral and religious truths, and in the rudiments of education. Since the abandonment by the society in 1902, or before that time, of its plan of maintaining houses in Brooklyn, it has been the custom for it to place children in private houses all over Long Island as members of the family with whom they are sent to live. In such cases a small weekly compensation is paid by the society to the persons with whom the children live for their care and maintenance. In accordance with its usual plan, the child Wisbauer was, immediately after the decease of his mother, placed by the society in one of its homes in Long Island. This home did not seem to prove satisfactory, and the society removed him after a short stay to another home upon Long Island. For various reasons he was assigned to various homes during the next three years, and in October, 1905, he was placed with Mrs. Carrie Place in the village of Huntington, where he remained until the institution of these proceedings. The society agreed to and did pay Mrs. Place the sum of $1.75 per week for the boy; the society also paid for his clothing, and there was not then, nor has there since been, any stated or definite period agreed upon between Mrs. Place and the society during which the boy should remain with her. The family in which the boy now lives consists of Mr. and Mrs. Place and a young daughter. Mr. Place is a black-smith in Huntington, and the family own the house where they reside. The boy is treated in all ways as a member of the family; Mrs. Place cares for him, and makes purchases of wearing apparel and the like as he may need from time to time, being reimbursed therefor, however, by the society. On the other hand, he does about the house such little chores and errands as would ordinarily be expected of a young boy, the child of a man in Mr. Place's circumstances. The school board, the appellants in this proceeding, contend that the boy is not a resident of their school district, and should be compelled to pay, by way of tuition, such sum as they decide upon; while the respondent, the Brooklyn Children's Aid Society, contends that he is a resident of the school district as that term is understood in the consolidated school law, and hence entitled to free tuition in that district.

Reference to several sections of the Consolidated School Law, Laws 1894, p. 1181, c. 556, will materially assist in the determination of this question. Section 36⁰ of title 7 provides as follows:

"Common schools in the several school districts of this state shall be free to all persons over five and under twenty-one years of age residing in the district as hereinafter provided; but non-residents of a district, if otherwise competent, may be admitted into the school of a district with the written consent of the trustees, or a majority of them, upon such terms as the trusees shall prescribe."

Section 11 of title 7 provides as follows:

"Every such person not being the parent, who shall have permanently residing with him or her a child or children of school age, some one or more of whom shall have attended the district school in said district for a period of at least eight weeks within one year preceding such school meeting * * * shall be entitled to vote," etc.

Section 59 of title 7 requires the trustees of each school district on the 1st day of August in each year to make to the school commis-

sioner a written report for the year ending July 31st preceding. The form and contents of the report are described. Among other things must be given:

"The number of children residing in the district on the 30th day of June previous to the making of such report, and the names of the parents or other persons with whom such children did respectively reside, and the number of children residing with each."

Section 60 of title 7 provides:

"The annual reports of trustees of school districts, of children residing in their district, shall include all over five years and under twenty-one years of age, who shall have been, on the 30th day of June last preceding the date of such report, actually in the district, comprising a part of the family of their parents or guardians or employers, if such parents, guardians or employers resided at the time in such district, although such residence was temporary; but such report shall not include children belonging to the family of any person who shall be an inhabitant of any other district in this state, in which such children may by law be included in the report of its trustees; nor any children who are supported at a county poor-house or an orphan asylum; nor any Indian children residing on reservations where schools provided by law for their education are taught."

The Compulsory Education Law, Laws 1894, p. 1682, c. 671, may be referred to as throwing some light upon the subject. Section 3 provides that "every child between eight and sixteen years of age, in proper physical and mental condition to attend school," must do so regularly. Section 4, as amended by Laws 1896, p. 679, c. 606, provides that every person in parental relation to a child between such ages, who is "in proper physical and mental condition to attend school, shall cause such child to so attend upon instruction or shall present to the school authorities of his city or district proof by affidavit that he is unable to compel such child to so attend." Section 2 undertakes to define the term "persons in parental relation to a child," and it is there provided that such term includes "the parents, guardians or other persons, whether one or more, lawfully having the care, custody or control of such child."

It is clear that Mr. and Mrs. Place had the care and control of the Wisbauer boy, and at least his physical custody. It would seem, therefore, that, so far as these school laws are concerned, Mrs. Place stood in parental relation to him, and, if so, it is clear that he was entitled to attend the Huntington school as though he were an actual resident of that district, and this without the payment of tuition.

Section 60 of article 7 of the consolidated school law, which has been quoted, requires the annual reports of the trustees of the school districts for some purpose, and at least one purpose was evidently that those to whom these should be made might be advised in respect to the children of school age who are required to attend school in the district. They are required to report children who were members of families who even temporarily resided in the district, and it seems to me that all of these provisions of the consolidated school law, together with those of the compulsory education law, indicate clearly that it was the intention of the Legislature that children temporarily domiciled in the district should receive free education there, unless

it appeared that the parents of the children or their legal guardians had a distinct residence elsewhere which gave their children the right to free tuition, in which case, of course, the residence of the child would follow the parent. That is not this case. The boy is an orphan; the Huntington school district is as much of a home as the boy has ever had since he was six years old, and the only home he knows, and Mr. and Mrs. Place certainly stand in parental relation to him practically; he is as much a member of their family as he could be of any family, and the evidence shows that he is treated as such.

The order appealed from required the trustees of the district in question to admit the boy to free instruction in the schools of the district. I conclude that the order was right, and should be affirmed, with costs. All concur.