THE BOARD OF EDUCATION OF UNION FREE SCHOOL DIS-
TRICT No. 2, TOWN OF TRENTON, Appellant, v. GEORGE
W. CRILL, Respondent.

(County Court, Oneida County, September, 1911.)

Common schools — Use by public.

> Where a man with a family containing children of school age,
> living in a rural town, hired a part of a house in a district of a
> neighboring town where a system of graded schools was estab-
> lished, furnished the apartments and moved into them about the
> first of September and his children attended the schools there, and
> where, at the close of the school year, the family moved back to
> their former residence and, at the beginning of the following
> school year, again moved to the same apartments they had occu-
> pied the previous winter, where the furniture they had then used
> had been left, although the father of the family continued to vote
> in the rural town, and was a candidate for office there, and ran his
> farm there with hired help, he was, nevertheless, a resident during
> the school year of the district in which his children attended
> school, within the meaning of section 568 of the Education Law,
> providing that the common schools shall be free to all persons
> residing in the district.

THIS action is brought by the plaintiff, a domestic munici-
pal corporation, which conducts a high school in the village of
Holland Patent in this county, to recover the fee charged for
non-resident pupils' tuition, furnished to two minor children
of the defendant during the school year 1909–10. The de-
fense is that the defendant and his children were in fact resi-
dents during that period. The issue was tried before a
justice and jury, and a verdict was rendered for the de-
fendant, from which the plaintiff has appealed to this court
upon questions of law.

George E. Pritchard, for appellant.

Martin & Jones, for respondent.

HAZARD, J.   There is very little controversy about the
facts in this case, but I think it may be stated that they

are established as follows: The defendant for many years
lived in the town of Floyd and was a property owner there.
He was assessed upon real estate in that town, as a resident,
in the year 1910. His two children, George, who was aged
seventeen at the time of the trial, and Adelaide, who was
then fifteen, had attended plaintiff's high school in the year
1908–09. At that time they lived in the family home in the
town of Floyd and were brought down to school daily. Their
tuition was paid for that school year. It seems that, in the
month of October, 1909, the defendant rented of one Parkes
a part of a house in the village of Holland Patent. The lease
was for one year, and it is said to have contained an option
to purchase. Whether the lease was oral or in writing does
not appear; and it does not seem material, as the option to
purchase does not impress me as of any particular conse-
quence. The apartments consisted of five rooms, together
with a shed and a barn; and the defendant and his family
moved in about the 1st of September, 1909. They did not
move all their furniture from the Floyd home. The evi-
dence is to the effect that they took " what was needed to fur-
nish the house," and that there were included three beds, two
stoves and a piano. It appears that defendant retained pos-
session of this place until April 1, 1911; but, during the
summer of 1910, the family went back to the Floyd house,
going there as soon as school closed in the spring and re-
turning in the fall in time for school. They did not move
any furniture back to Floyd in the summer of 1910. It
appears that, in addition to defendant being assessed in 1910
as a resident in the town of Floyd, he was elected supervisor
of that town at the election in November, 1909, and that he
registered as a voter in the town of Floyd in 1908, 1909 and
1910, and voted there in all of those years. The evidence in
the return is not very clear as to how much of his time
defendant actually spent with his family in the Holland
Patent house during the fall and winter of 1909–10 and the
spring of 1910. He was asked if he spent any part of his time
in the town of Floyd, and said " yes," but wasn't asked how
much, or, at least, no such question appears. It does appear
that he " run the farm " in Floyd during that time, but that

it was with hired help. The details regarding that do not appear, as to whether he had some farmer in charge or was personally present and gave directions himself. He testifies that he and his family had their meals in Holland Patent and "all lived there during the time in question." He was a candidate for supervisor in the fall of 1909, which was during part of the time in question, and was elected; and it appears that, during the following winter, 1909–10, he went back and forth to Utica to attend meetings of the board. He was asked if he told the electors of the town of Floyd that he was a resident of Holland Patent, and answered by saying that he told the town board so. It appears that plaintiff has fixed a rate for non-resident pupils, and this suit was brought to recover that rate. There is absolutely no question but that the children of the defendant attended plaintiff's school during the time sued for.

The statute involved is section 568 of the Education Law, subdivision 1 of which reads as follows: "Common schools in the several school districts and cities of this state shall be free to all persons over five and under twenty-one years of age residing in such districts or cities." Subdivision 2 provides that non-residents may be admitted upon such terms as the board of education may prescribe. The issue in this case is whether defendant was a resident or non-resident. There was hardly a controverted question of fact in the case, and a correct decision of it depends upon the true definition of the word *residing* or *non-resident,* as used in the section quoted.

If we may use the word "living" to start out with, it may be said that there can be no question but that defendant and his family were living at Holland Patent during the period of the school year from September, 1909, and ending in June, 1910. The question is, do "living" and "residing" mean the same thing in law? A decision of that question involves a consideration of the legal meaning of the word "residence;" and an examination of the authorities discloses that it has received different definitions in various cases, principally involving franchise, taxation and jurisdiction. Strictly speaking, the case at bar does not come under either head, but we may look at the decisions in these cases for aid in settling

the questions of what is meant by a resident and what a non-resident. " There is sometimes a distinction between actual and legal residence; the latter being generally equivalent to a domicile." " To constitute a domicile two things must concur: first, residence; second, intention to remain there. Domicile, therefore, or legal residence, means more than residence. A man may be a resident of the particular locality without having his domicile there. He can have but one domicile at one and the same time, at least for the same purpose, although he may have several residences." In some cases it has been held that the word " residence," as understood in the laws of New York, means domicile. In Cincinnati, H. & D. R. Co. v. Ives, 21 N. Y. St. Repr. 67, from which the above quotations are made, Justice O'Brien considers the proper definition of the term in question, at length, and reaches the above conclusions. To constitute residence there must be a settled, fixed abode, an intention to remain permanently *at least for a time,* for business or other purposes. Frost v. Brisbin, 19 Wend. 11. In that case, it was held that a person had his domicile in this State while his residence was in Wisconsin. Similar holdings were made in cases of Hart v. Kip, 22 N. Y. Supp. 522, and Hanover National Bank v. Stebbins, 23 id. 529.

Burrill v. Jewett, 2 Robt. 701, is a case in which the definitions of and distinctions between domicile and residence were fully considered by the court, after an exhaustive examination of the cases. It was held that there was a difference between the meaning of the two words. In that case it was held that a man who maintained a permanent home in New York city, but who had been away continuously for two and a half years on a trading trip to China, was not a resident of New York.

In Bartell v. City of New York, 5 Sandf. 44, the court seemed to consider the words *domicile* and *home* as about synonymous, and said the fact of plaintiff's home being in Westchester county, where he lived a little more than one-half the year, was not consistent with the fact that his residence was in the city of New York for the remainder of the year.

In Stacom v. Moon, 13 Wkly. Dig. 348, which was the case of a woman who seems to have had a permanent home in New York city, but who was keeping a boarding house in Saratoga Springs in a house which she had leased for that purpose from May first to October first, the court held that, between those dates, she was a resident of Saratoga county.

" The domicile is a habitation fixed in any place with an intention of always staying there, while simply the residence is much more temporary in its character. No length of residence without the intention of remaining constitutes domicile." A person's domicile may be at one place, while his residence for the time being may be at another. City of New York v. Genet, 4 Hun, 487; Bartlett v. City of New York, 7 N. Y. Super. Ct. 44.

." To establish a residence, requires a less permanent abode than to give a domicile, or even to create an inhabitance." Bell v. Pierce, 51 N. Y. 17.

On the other hand, it has been said: " Generally speaking, domicile and residence mean the same thing, and an inhabitant is defined to be one who has his domicile in a place or a fixed residence there." Kennedy v. Ryall, 67 N. Y. 386.

For the purpose of voting, residence is equivalent to domicile. People v. Platt, 117 N. Y. 159.

Residence is defined to be " a word used in law to denote the fact that a person dwells in a given place. A word capable of different meanings including temporary residence or permanent domicile." 34 Cyc. 1647. " That place is properly the *domicile* of a person in which he has voluntarily fixed his abode, not for a mere special or temporary purpose, but with the present intention of making it his permanent home." 34 Cyc. 833.

The Standard Dictionary defines residence as " the place or the house where one resides." Resided is defined in that book " to make an abode for a considerable time." The Century Dictionary defines residence as follows: " Resident; residing; having a seat or dwelling; dwelling or having an abode in a place for a continuance of time." Webster

defines residence as " the place where one resides; a dwelling; a habitation."

It has been held that, if a taxpayer has two residences in different taxpaying districts, or in different States, as for instance, a summer home and a winter home, or two houses kept open the year around, he is taxable at that place which was originally his domicile, providing the opening of the other house has not involved the abandonment of the original domicile and the acquisition of a new one; or at that place which he regards and claims as his domicile, as shown by keeping the main part of his establishment there, holding office, voting, causing his property to be assessed for taxes there, and such other indications. Parker v. Lewis, 59 App. Div. 430; affd. without opinion, 179 N. Y. 591. See also People v. Barker, 17 N. Y. Supp. 788; Cincinnati, H. & D. R. Co. v. Ives, 3 id. 895.

I think the recent case of Matter of Newcomb, 192 N. Y. 238, is absolutely authoritative on the proposition that a distinction exists in legal phraseology between *residence* and *domicile.* In that case it is said: " Residence means living in a particular locality; but domicile means living in that locality with intent to make it a fixed and permanent home." Again, " a temporary residence for a temporary purpose with intent to return to the old home when that purpose has been completed, leaves the domicile unchanged."

I think we must assume that the jury decided that defendant was at least a resident of Holland Patent; and keeping in mind the distinction between residence and domicile, it does not seem to me there can be any controversy over that proposition. At least, I cannot quarrel with the verdict of the jury to that effect. It cannot be questioned that this defendant had an absolute right to do just what he did in the fall of 1909, and hire a tenement and move from his permanent home in Floyd into the neighboring village of Holland Patent and reside there for the winter. Nor do I see that his motives in so doing can be a matter of much consequence. It may fairly be assumed that one reason was to enable his children to conveniently attend

plaintiff's school; and, if it is material, it may even be assumed that he might have been influenced by a thrifty desire to avoid the expense levied against non-residents. He doubtless paid his rent while he lived there; and, if his view is the correct one, that is all he can be legitimately charged and called upon to pay. He and his family, beyond doubt, even controversy, *lived* in Holland Patent during the school year in question, and, while the term "reside" under the decisions and definitions quoted may be fairly said to involve some duration and permanency, I do not believe, if the judgment involves merely a determination that defendant was a resident of Holland Patent, that an affirmative decision constitutes any error. Defendant's counsel admits in his brief that residence and domicile have distinct and different meanings, but contends with great earnestness and ability that the word "residence," as used in the Education Law, means domicile and nothing less. This I think presents the only legal question in this case. If a verdict for defendant necessarily involves a finding that he was *domiciled* in Holland Patent during the school year in question, I think I should have to decide that the verdict rendered was against the weight of evidence. The entire evidence very clearly goes to show a lack of intention on the part of Mr. Crill to abandon his old home or domicile in Floyd and to establish a new one in Holland Patent. His voting in Floyd in November, 1909, and his candidacy for supervisor of that town clearly negative any such contention.

Appellant urges that the fact that he voted in Floyd in November and was a candidate for office in that town at the same election constitutes proof positive in this case that Mr. Crill was not a resident of Holland Patent. Upon all the evidence I do not think that is so; and I think he was a resident of Holland Patent, using the term in its strict, limited legal meaning. I think Mr. Crill's domicile was in the town of Floyd throughout. It must be borne in mind that the question of the fact of his residence in Holland Patent from September 1, 1909, to June 1, 1910, upon his right to vote in Floyd, in November, 1909, and his right to hold office in that town after January 1, 1910, is not before

the court, except as those facts may properly be considered in connection with his intentions as regards his residence and his domicile. He is not on trial for illegal voting, nor for illegally holding office. I think the legal effect of those facts so far as they may properly be applied to this case is limited to warranting (in connection with the other evidence) a decision that Mr. Crill retained his domicile in Floyd. I have thus reached the conclusion on what may be considered the question of fact in this case, that defendant's correct legal status at the time in question was *that he was domiciled in Floyd and temporarily residing in Holland Patent.* I do not see how he can possibly be considered a "non-resident," but his domicile was just as clearly in Floyd as his residence was in Holland Patent.

This brings us to the only legal proposition involved, which is as to the appellant's contention that the word "residence," as used in the Education Law, means domicile. Upon that point I think we may be guided by the *dictum* in the case of People ex rel. Brooklyn C. A. Society v. Hendrickson, 54 Misc. Rep. 337, in which case Justice Scudder says (p. 341): "A recital of the various provisions of the School Law in which the residence of children is referred to makes it obvious that it was not the legislative intent to employ it in the narrow sense of domicile." The Hendrickson case was affirmed by the Appellate Division (see 125 App. Div. 256), and was again affirmed without opinion by the Court of Appeals. The facts in that case are not entirely similar to the one at bar, but some similar principles of law are involved in both cases. In the opinion Justice Hooker says (p. 260): " It seems to me that all of these provisions of the Consolidated School Law, * * * indicate clearly that it was the intention of the Legislature that children temporarily domiciled in the district should receive free education there, unless it appeared that the parents of the children or their legal guardians had a distinct residence elsewhere which gave their children the right to free tuition, in which case, of course, the residence of the child would follow the parent."

I believe both parties to the case at bar have cited this language as supporting their diverse contentions, and the

language quoted certainly merits careful consideration in connection with the decision of this case. As applied to this case, and owing to the different facts in the Hendrickson case, I think the words " at the time " should be read into the language quoted above after the words " legal guardians had," so as to make it, as I think it means, to read : Unless it appeared that the parents of the children or their legal guardians had at the time a distinct residence elsewhere. I think that construction is the only one which can be applied to the language cited above; and, as applied to this case, it would mean that, if the Crill children were going to school in the village of Holland Patent and boarding with some resident there, their parents *at the time* living in Floyd, they, the parents, would have to pay as non-residents; but, if they were *at the time* living with their children in Holland Patent, they would not have to pay.

Appellant's counsel, in support of his contention that residence means domicile when used in the Education Law, cites subdivision 4 of section 198; but I do not believe that is controlling. It would simply have the effect of having children enrolled in the district in which they happen to reside on the thirtieth day of June in each year. He also cites sections 530–531 of the Education Law, which constitute a part of what is known as the Compulsory Education Law, but it seems to me this citation does not support his contention; in fact, I have to arrive at the opposite conclusion. The fact is that under these sections, if Mr. Crill or anybody else had moved into the village of Holland Patent during the school season, having children of school age in his family, he would be *compelled* to send them to school and would be guilty of a crime if he did not. It seems to me that it is a rather necessary corollary that they would be entitled to free tuition.

I think upon the whole case that I must decide adversely to appellant's contention, and hold that residence, as used in the School Law of the State, does not necessarily mean domicile; and, therefore, I must affirm the judgment of the court below and dismiss this appeal, with costs.

Judgment affirmed, with costs.