In the Matter of the BOARD OF EDUCATION, UNION FREE SCHOOL DISTRICT No. 6, HARRISON, Respondent, *v.* JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, et al., Appellants; BOARD OF EDUCATION OF SCHOOL DISTRICT No. 14, TOWN OF RAMAPO, et al., Respondents.

Third Department, December 13, 1967.

*Charles A. Brind* (*John P. Jehu* of counsel), for Commissioner of Education, appellant.

*Lester D. Cook* for the Board of Education of the City School District of Rye, New York, appellant.

*Joseph A. Vassallo* and *Henry J. Smith* for Board of Education, Union Free School District No. 6, Harrison, respondent.

*Meyer, Kissel, Matz & Seward (Henry M. Kidder, Jr.,* of counsel), for Edwin Gould New York Fund and another, respondents.

HERLIHY, J. The facts of the case are relatively simple. It appears that prior to the death of their mother, the infants Linda and Vivian Harving resided with their mother and stepfather in the City of Rye and the children attended the Rye city schools. The mother died on July 21, 1959 and pursuant to the terms of her last will and testament, Miss Becher, a resident of the respondent Harrison school district, duly qualified as guardian of the persons of Linda and Vivian Harving and as coguardian of their property.

The infants remained in Rye with their stepfather until August 31, 1960 when the guardian caused them to be placed in the Lakeside School within the respondent Town of Ramapo school district. At no time either before or after the death of their mother did the children reside within the Harrison school district. On or about September 26, 1962 the Town of Ramapo school district duly requested the Commissioner of Education to determine whether the Harrison school district or the Rye school district was responsible for payment of tuition to it pursuant to subdivision 4 of section 3202 of the Education Law (all references hereinafter to statutes are to this section of the Education Law unless otherwise specified). After some delay and on June 30, 1964 the Acting Commissioner of Education (hereinafter referred to as the Commissioner) determined that the Harrison school district was responsible for such tuition. The opinion concluded " that a subsequent application to reopen was denied ".

The resultant article 78 proceeding questions this determination and we determine that the petitioner's right to so proceed is not barred by section 310 of the Education Law, as contended by the Commissioner.

Subdivision 4 of section 3202 provides that " If such children are not supported and maintained at the expense of the public welfare district [not applicable], the cost of the secular instruction of such children in the school or schools in the district shall be a charge upon and shall be paid by the school district responsible for their instruction at the time of their admittance to * * * [the] institution ". The purpose of this section is to relieve the school district in which the institution is located from the over-all burden of supporting children from other school districts. As subdivision 4 of section 3202 applies to the present facts, the Town of Ramapo school district in which Lakeside School is situated is not responsible for pupils attending from

some other school district which was their actual and only residence.

The resolution of which district was responsible for the education of the pupils here involved prior to their admittance to Lakeside required the Commissioner to determine the law and the facts in this case. His memorandum of decision and the brief submitted on his behalf upon this appeal do not indicate in which way, if at all, he applied section 3202 to this case. His reference to the section was in a tangential manner. Instead, it appears that he concluded that section 82 of the Domestic Relations Law mandates that the residence of orphan children is that of their testamentary guardian where such a guardian has been appointed and qualified.

Subdivision 1 of section 3202 provides that a student "is entitled to attend the public schools maintained in the district or city in which such person resides without the payment of tuition." Subdivision 2 of section 3202 provides for the education of children in districts in which they do not reside and subdivision 3 of this section provides for an offset to the tuition of nonresidents. Subdivision 4 of section 3202, as set forth above, appears to be an exception to the free education provided for in subdivision 1 of section 3202. Subdivision 5 of section 3202 provides that certain children not residing with their parents or legal guardians shall be deemed residents of the school district in which they are residing and also provides that if they are not deemed residents of the school district in which they are actually residing they shall nevertheless receive free tuition in the district in which they are residing unless the Commissioner relieves the resident school district from such burden.

Special Term determined that as a matter of law the residence or domicile of children in such a situation remains the actual physical residence or domicile at the time of being orphaned until the testamentary guardian performs some affirmative act to evidence personal control or physical custody of the ward. The rationale of the decision of Special Term demonstrates understanding of the legal problems involved, but the applicability of section 3202 upon and after the determination of residence should be found by the Commissioner, thereafter subject to court review, if need be.

The present action being one of first impression in the appellate courts, we would note that the Commissioner has in previous determinations relating to payments by school districts given great consideration to the factual issue of who was actually exercising parental control over the students. In *Matter of*

*Kuppler* (33 N. Y. St. Dept. Rep. 407, 409) the Commissioner stated: "There is a presumption that the residence of the child is the residence of the parents. This presumption may be over-come by proof showing that the parties have surrendered paren-tal control and that such control is being exercised by some other person with whom the child resides." It appears that the Commissioner was faced with the question of residence under now subdivision 1 of section 3202. In *Matter of Appeal from the Action of the Board of Education of Union Free School District No. 12 of the Town of Hempstead* (60 N. Y. St. Dept. Rep. 27, 28), the Commissioner stated: "As a matter of law, it is suffi-cient in the establishment of residence for school purposes that the person with whom the pupils are residing exercises parental control ". In that case the Commissioner found that the parents had waived parental control by allowing the owners of the boarding home residence of the pupils to be appointed guardians of the pupils. In *Matter of Willoner* (65 N. Y. St. Dept. Rep. 19) the Commissioner found as a fact that the parents were not able to exercise parental control over the pupil and, therefore, the residence of his grandparents with whom the child was actually residing determined the residence of the pupil. In the following case the determination of the Commissioner as to residence was also based upon the facts that the parents had relinquished parental control and the person or persons with whom the students were residing had assumed parental control: *Matter of Bradway* (65 N. Y. St. Dept. Rep. 116).

*Matter of Long* (65 N. Y. St. Dept. Rep. 145) was somewhat similar to the present case. In that case the Commissioner determined that the residence of the child was the residence of the duly appointed guardian, it appearing that the student had never resided with the guardian and the Commissioner appar-ently gave no consideration to the factual question of who exercised parental control prior to admission to the orphan asylum although such fact had been of prime importance in the other decisions referred to hereinabove.

It appears from the above decisions that the Commissioner has at various times given weight to the fact of parental control as opposed to the legal question of who can exercise such control and at other times has given no consideration to such control.

Section 1 of article XI of the New York State Constitution requires that the Legislature shall provide for a system of free schools for the education of children residing in this State. In providing for such education the Legislature enacted section 3202, the purpose of which is to specify which school district must provide or pay for the education of what children. The

Commissioner must initially determine the question of what facts are relevant in determining when tuition is required and the responsibility therefor, pursuant to the language of section 3202. If, as a matter of law, he should determine that the sole relevant fact is one of " residence ", then he must determine the question of residence in the first instance as the trier of the fact and in making such determination, he must apply such legal principles as are generally applicable to statutory questions. The application of such legal principles should, however, be consonant with whatever express directives or clear intent the Commissioner may find the Legislature provided in section 3202. The Commissioner's decision should set forth in sufficient detail the factors relied upon in arriving at his decision and the basis for his final determination to insure judicial review.

The application of section 3202 governs which district is responsible for " tuition from nonresident pupils " and the Commissioner's sole reliance upon section 82 of the Domestic Relations Law was error.

The order appealed from should be modified by striking therefrom so much of the last decretal paragraph thereof as requires the Commissioner to find that the residence was within the City School District, Rye, New York, and as so modified, affirmed.

GIBSON, P. J., REYNOLDS, STALEY, JR., and GABRIELLI, JJ., concur.

Order modified by striking therefrom so much of the last decretal paragraph thereof as requires the Commissioner to find that the residence was within the City School District, Rye, New York, and, as so modified, affirmed, without costs.