Gtabrielli, J.
In a proceeding 'brought under CPLR article 78, the Appellate Division has ruled, and correctly we think, that the New York Commissioner of the Department of Social Services erroneously affirmed a determination of the New York City Department of Social Services which denied the application of the petitioner, a mentally retarded- adult, for a public assistance grant under the then existing aid to the disabled program (Social Services Law, § 301 et seq.; L. 1951, ch. 77, as amd.).
Petitioner, now 24 years old, resided with his parents in Brooklyn, New York until July, 1969 when, because of his disability, he entered the Training School Unit of the American Institute for Mental Studies at Vineland, New Jersey. At that time, and annually thereafter, his parents entered into a contract with the school for the maintenance, treatment, training and education of their son. Until his 21st birthday in November, 1971 and, of course, while at this school, petitioner was eligible for and received financial assistance from the State -of New York pursuant to section 4407 of the Education Law.[1] When that program of aid ceased because of his attaining majority, petitioner’s parents applied for assistance under the aid to the disabled program pursuant to the plan provided for *169 in the Social Services Law. Section 303 (subd. 4, par. [a]) of that law provides, insofar as applicable to the time period herein important, that “ [a] id shall be provided for the recipient * * * in a residential facility for the mentally retarded approved * * * by the state department of mental hygiene, if and for so long as federal aid is available for care therein ”. (L. 1973, ch. 676, § 11.) The court was informed on oral argument that the funds sought would, at least in part, come from the Federal Government, placed by the State in its general treasury, and that the State would not be providing more than $200 per month.
The procedural background and facts leading to the case now before us are briefly stated. In September, 1972, the New York City Department of Social Services notified petitioner’s parents that the petitioner was ineligible for assistance for the assigned reasons that (1) petitioner had adequate resources of his own (a contention subsequently abandoned by the department), (2) petitioner was not residing in New York State because of his attendance at the Vineland school and (3) that petitioner was not residing in a facility ‘ ‘ presently approved, licensed or operated by the State Department of Mental Hygiene.” Subsequently, the department supplied a list of approved New York facilities; however, further investigation revealed that only one New York institution would consider petitioner and then on a three-month trial basis only. Petitioner requested a Fair Hearing before the State commissioner in accordance with accepted procedure.
Following a hearing held on January 2,1973 the commissioner upheld the previously made determination on the grounds (1) that petitioner was not a New York resident and (2) that the Vineland school was not an approved .or licensed facility. Petitioner, by. his father, then commenced this proceeding in the Supreme Court, New York County, to review the denial of his application for assistance and, pursuant to CPLB 7803 (subd. 4), the proceeding was transferred to the Appellate Division. That court unanimously annulled appellant’s determination holding that it was arbitrary for appellant “ to require retarded persons applying for aid to the disabled to enter an approved institution in this State rather than an out-of-State facility ” and that since there was “ no dispute regarding Vineland’s *170 accreditation by appropriate New Jersey authorities ” and, further that it was conceded that the Department of Mental Hygiene was “ ‘ prepared to approve such out-of-state facilities that are approved by the 'suitable licensing authority in the state under consideration ’ ”, approval was not a determinative issue.
In this court, appellant commissioner challenges the determination of the Appellate Division on three grounds. First, the earlier contention that petitioner is a nonresident of New York, abandoned in the court below, is resurrected.[2] Second, appellant continues to urge that the Vineland school is not an approved facility; and third, appellant now advances the argument that the State may, in its discretion, properly limit grants in aid to facilities within the State.
For strong policy and legal consideration, we here address ourselves to this last contention. Such an issue or claim cannot now be made. This contention (limiting grants by requiring residents to use them in facilities within the State) was not a ground advanced in the original tribunal nor was it a ground for the administrative determination upon which this review is founded, and, thus, it may not be properly raised as a basis for reversal.. As we held in Matter of Barry v. O’Connell (303 N. Y. 46, 50) “ [i)n the course of performing our function as a court of review we have had in mind a statement made by high-authority in its consideration of a kindred problem: ‘ * * * a reviewing court, in dealing with a determination * * * which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. ’ (Securities & Exch. Comm. v. Chenery Corp., 332 U. S. 194,196.) ”
Turning to. the argument that petitioner is to be denied a grant of aid on the claim that he was not a resident of New *171 York, we find there to be no substance thereto. Appellant has urged, without merit we think, that allowance of financial assistance was dependent not on domicile but on residence and since residence is determined by physical presence alone, he lost his New York residence after having been a patient at the Vineland school. His presence at the school is for the sole purpose of treatment, care and rehabilitation; that was no showing he intended to make the school his permanent residence or, indeed, that he had surrendered his former residence. In analogous situations, it is well-established that students do not gain or lose a residence simply because they are away from home (Matter of Robbins v. Chamberlain, 297 N. Y. 108, 110-111; Matter of Goodman, 146 N. Y. 284; cf. Matter of Davy, 281 App. Div. 137,139). The same rule prevails regarding persons removing to hospitals or other institutions for treatment (Silvey v. Lindsay, 107 N. Y. 55). This is not to say that one in such circumstances may not change his residence, but to do so the facts establishing such a change must be wholly independent and outside his presence as a student and his intention must be manifested by resultant acts (Matter of Robbins v. Chamberlain, supra; Matter of Garvey, 147 N. Y. 117; cf. Matter of Palla v. Suffolk County Bd. of Elections, 31 N Y 2d 36, 48). Here, it is crystal clear that no such manifestation is present. In Garvey (supra, p. 123) the court held that a seminary student’s intention to reside at the seminary indefinitely was not enough to accomplish a change of residence. We wrote that “ the sojourn of the student is assumed to be temporary, and the law preserves to him his former residence, notwithstanding his absence therefrom.”
The case before us is little different from Garvey (supra). Petitioner’s stay at the Vineland school was arranged for by his parents under yearly contracts only and their ability to continue making annual payments on this record, notwithstanding governmental assistance, makes permanency suspect. Moreover, the record does not manifest any evidence that petitioner, or his parents, intend for petitioner to remain at Vineland permanently. In fact, the opposite is true. No changes have taken place in petitioner’s home. His parents maintain his room at their home for him, and that is where he spends vacations and holidays. In sum, the mentally retarded petitioner, required *172 to take treatment in such a residential facility, does not, without more, acquire a new domicile or residence simply by his attendance at such a school. We conclude that petitioner is a New York resident.[3]
Similarly lacking in substance is the claim that the Vineland school was not approved by the New York Department of Mental Health and, thus, it is urged, is not an approved facility within the meaning of the then applicable Social Services Law (§ 303, subd. 4, par. [a]).[4] However, we think the Appellate Division was entirely correct in holding that the Vineland school was an approved facility, based on the undisputed fact that it had been accredited by suitable and appropriate New Jersey authorities and, concededly, the New York, Department of Mental Hygiene had ruled that it would approve facilities that are approved by appropriate authorities in other States.
The result we reach in this case is founded on the legal principles and grounds to which we have referred. To this, we would add that the motivation for the enactment of the statutes we have reviewed has been buttressed by the humanitarian concepts forming the enlightened approaches to the plight and treatment of the mentally retarded.
To adopt a converse holding, which we find unsustainable and ill-founded, could well result in a public failure in discharging a legal and humane responsibility, particularly in light of the apparent paucity of adequate residential facilities to care for the mentally retarded in relation to the number of persons in need of adequate care.
Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Judgment affirmed.

. Education Law (§ 4407) in pertinent part, provides that: “ 1. When it shall appear to the satisfaction of the department that a handicapped child, who, in the judgment of the department can reasonably be expected to benefit from instruction, is not receiving such instruction because there are no adequate public facilities for instruction of such a child within this state because of the unusual type of the handicap or combination of handicaps, the department is authorized to contract with an educational facility located within or without the state, which, in the judgment of the department, can meet the needs of such child, for instruction of such child in such educational facility, and the department is further authorized to expend for such purpose a sum of not to exceed two thousand dollars per annum for each such pupil.”

. This court will consider a question that has been raised in the tribunal of original jurisdiction even though it may not have been argued in the Appellate Division (Persky v. Bank of Amer. Nat. Assn., 261 N. Y. 212; Cohen and Karger, Powers of the New York Court of Appeals, § 161). However, as noted in the discussion that follows, the converse does not obtain.

. Even if it might be said that petitioner has two residences, one in New York and the other in New Jersey, such is permissible (Matter of Sorrentino, 297 N. Y. 696; 17 N. Y. Jur., Domicile and Residence, § 6).

. Social Services Law (§ 303, subd. 4, par. [a]; L. 1973, ch. 676,.§ 11), in pertinent part, reads: “ (a) Aid shall be provided for the recipient * * * in a residential facility for the mentally retarded approved, licensed or operated by the state department of mental hygiene, if and so long as federal aid is available for care therein.”