Jennifer ROGOWSKI, by Verna ROGOW-SKI, her mother, Verna Rogowski, Individually, and Rosemary Padula, Plaintiffs,

v.

The NEW HARTFORD CENTRAL SCHOOL DISTRICT, Edward Martin, as Principal of New Hartford Senior High School, and James A. Meyer, as Superintendent of Schools, Defendants.

No. 89–CV–10.

United States District Court, N.D. New York.

Feb. 22, 1990.

Rossi, Kehoe, Murnane & Hughes (Thomas P. Hughes, of counsel), Utica, N.Y., for plaintiffs.

Damon & Morey (Sharon M. Porcellio and Hedwig M. Auletta, of counsel), Buffalo, N.Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McAVOY, District Judge.

Upon reconsideration of that portion of this court's July 10, 1989 order denying defendants' motion for summary judgment dismissing plaintiff Jennifer Rogowski's claim alleging a denial of a property interest without due process of law, this court grants the motion of the remaining defendant New Hartford Central School District and dismisses this claim, thereby disposing of the complaint in its entirety. In the court's view, defendant, in determining that plaintiff Jennifer Rogowski was not a bona fide resident of the New Hartford Central School District—and was, therefore, ineligible to remain at New Hartford Senior High School but had to return to her former school, the Utica Free Academy, in Utica, New York, where her parents both lived—did not, given that the residence of an unemancipated minor is presumed to be that of her parents, deprive Jennifer of any property interest protected by the Due Process Clause of the 14th amendment.

Background

While living with her parents in Utica, plaintiff attended the first semester of ninth grade at the Utica Free Academy. Prior to the beginning of the second semester, plaintiff, her mother and her aunt (Rosemary Padula) sought to have plaintiff admitted to the New Hartford Junior High School in New Hartford, New York, apparently because of problems at home and at school, by representing to the New Hartford Central School District that plaintiff would be living with her aunt, a resident of New Hartford, and that plaintiff's parents had surrendered the care, custody and control of their daughter to Mrs. Padula. In January 1987, plaintiff enrolled in the ninth grade at the New Hartford Junior High School. Jennifer completed ninth grade, living with her aunt on weekdays during the school year but returning to her parents' or grandmother's house in Utica on the weekends and for vacations. (Jennifer also occasionally returned to her parents' house at night during the week.) At the end of the summer vacation, Jennifer returned to the School District to enroll in the New Hartford Senior High School.

Plaintiff began tenth grade on September 9, 1987. Approximately one week later, plaintiff was called to the office of the principal, Edward Martin, to be questioned about her living arrangements with her aunt. This inquiry was prompted by a routine resort at the beginning of each school year by the superintendent of the School District, Dr. James A. Meyer, to a "tickler system" which revealed, among other things, the names of students whose

residency in the school district needed to be verified. Dr. Meyer contacted Edward Martin who then conducted the in-person interview with plaintiff. Based upon the information that Jennifer had given him, Mr. Martin had doubts about whether plaintiff was a bona fide resident of the School District and so informed Dr. Meyer, who, upon considering the same information that plaintiff had given to Mr. Martin, was also of the opinion that plaintiff was not a resident of the School District. Before arriving at a final determination, however, Dr. Meyer consulted the School District's attorney; he, too, was of the view that Jennifer was not a resident of the School District. After this consultation, Dr. Meyer instructed Mr. Martin to inform Jennifer that she would not be able to remain in the New Hartford Senior High School. Mr. Martin met with plaintiff at the end of the school day, went over the information that Jennifer had given him during their first conversation, and told her that she would not be able to remain at the school because she was not a legitimate resident of the School District. Plaintiff was told to clean out her locker, that she should be attending the Utica Free Academy, that the school would help make the transition back to the Utica Free Academy as smooth as possible, and that plaintiff's parents would be informed of the School District's decision, which they were by letter dated September 16, 1987.

Upon returning to her aunt's house, plaintiff told her aunt that she could not return to the New Hartford Senior High School. Mrs. Padula called Mr. Martin that night and expressed her extreme displeasure with the School District's decision. Mrs. Padula also spoke directly to a teacher and then called Dr. Meyer. As a result of that conversation, during which Dr. Meyer told Mrs. Padula that she could take the matter to the board of education, Dr. Meyer agreed to meet with Mrs. Padula personally, which he did at his office on or about September 18. At that meeting, Dr. Meyer stated that he believed, from the information he had been given, that Jennifer was not a resident of the School District. He told Mrs. Padula that he would

like to meet with Jennifer and requested Mrs. Padula to have Jennifer come in to school on the following Monday to meet with him.

On the following Monday, Dr. Meyer met with Jennifer and then with her mother to discuss the matter. He related the facts as he understood them to Mrs. Rogowski and told her that it was still his decision that Jennifer was not a resident of the School District. On September 23, 1987, Dr. Meyer sent a letter to Jennifer's parents confirming his decision that Jennifer was not a bona fide resident and therefore not entitled to attend the New Hartford Senior High School.

Plaintiff had apparently not been attending New Hartford Senior High School since the date of the initial decision on September 16 regarding her residency. Although upset, Jennifer told her aunt that she wanted to attend the Utica Free Academy; her aunt would not permit her to return to that school primarily because Jennifer had no way of getting there—the school was apparently about 10 to 15 minutes away from her aunt's house by car.

On October 9, 1987, plaintiff commenced a proceeding in State Supreme Court challenging the School District's decision regarding her ineligibility to attend New Hartford Senior High School. On November 23, Jennifer returned to the New Hartford Senior High School pursuant to an order of Justice John W. Grow ordering the School District to readmit Jennifer pending a Board of Education hearing to determine Jennifer's residency. That hearing took place on December 3, 1987; plaintiff appeared, represented by counsel, and was permitted to call and to cross examine witnesses. As a result of that hearing, Jennifer was again found not to be a resident of the School District and therefore ineligible to attend the high school. In the written decision issued following the hearing, plaintiff was informed of her right to appeal the determination of ineligibility to the Commissioner of Education. No administrative appeal was taken; rather, plaintiff chose to return to State Supreme Court to challenge the decision in that forum. Justice Grow

thereupon set aside the administrative decision ruling that it was arbitrary and capricious. No appeal was taken from Justice Grow's decision.

Jennifer continued in attendance at the New Hartford Senior High School until her 16th birthday in April 1988, at which time she dropped out of school. She, thereafter moved to Boston, Massachusetts, where she apparently is currently living with her infant daughter.

This lawsuit, alleging claims under 42 U.S.C. § 1983, ensued. As a result of a motion by defendants for summary judgment, most of this action was dismissed. What remained essentially was Jennifer's claim that she had been impermissibly deprived of a property interest in continuing to receive a free public education in the New Hartford Central School District. The court thereafter on its own accord decided to reconsider its ruling denying the motion of the School District for summary judgment dismissing this claim. The parties were so informed and additional briefing was requested. Defendant School District argues that Jennifer was not deprived of any property interest, that even if she had been deprived of a property interest the School District accorded her all the process that was due, and that even if Jennifer's right to procedural due process had been violated she would at most be entitled to nominal damages given that the Board of Education reached the same decision after the hearing conducted pursuant to Justice Grow's order. Upon reconsideration, for the reasons stated below, the court grants the School District's motion; the complaint, therefore, is dismissed in its entirety.

Discussion

As stated in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." *Id.* at 569–570, 92 S.Ct. at 2705. Property interests, however, are not created by the Constitution. "Rather they are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." *Id.* at 577, 92 S.Ct. at 2709. This is so because a property interest in a benefit must be based on more than a mere unilateral expectation of that benefit; the person claiming the benefit must have a legitimate claim of entitlement to it. *Id.*

In the present case, there is no dispute that Jennifer as a resident of New York State, by virtue of the New York Constitution, had a property interest in receiving a free public school education. *See* N.Y. Const. art. XI, § 1; *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975). In pertinent part, the New York Constitution states that "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all of the children of this state may be educated." N.Y. Const. art. XI, § 1. Jennifer, however, as defendant points out, was not denied a public education as a resident of New York State. She was not, for example, suspended or expelled for disciplinary reasons from a school at which she had an otherwise unfettered right to be. *See Goss*, 419 U.S. at 569–575, 95 S.Ct. at 732–736. Rather, Jennifer was found by the School District to be ineligible to attend high school in the New Hartford Central School District because she was not, in its view, a resident there. She was free, as defendant notes, to attend school without interruption at the Utica Free Academy in Utica where her parents resided.

In determining that Jennifer was not a bona fide resident, the School District undoubtedly acted pursuant to state law providing that "[a] person over five and under twenty-one years of age who has not received a high school diploma is entitled to attend the public schools maintained in the district in which such person resides without the payment of tuition," N.Y.Educ.L.

§ 3202(1) (McKinney 1985), and that "[n]on-residents of a district ... may be admitted into the school or schools of a district ... upon the consent of the ... board of education, upon terms prescribed by such ... board," N.Y.Educ.L. § 3202(2). *See also Matter of Board of Education, Union Free School District No. 6, Harrison, New York v. Allen*, 29 A.D.2d 24, 285 N.Y.S.2d 487, 491 (3d Dep't 1967) (noting that the purpose of section 3202 "is to specify which school district must provide or pay for the education of what children"). The question, it seems, is whether Jennifer had a property interest in receiving her tuition-free public education in the New Hartford Central School District. The court thinks not.

As the foregoing indicates, New York has not created an unfettered right to attend any public school in the State; the New York Legislature has seen fit to impose a residency requirement and beyond that to empower local boards of education to admit nonresident students. Under New York law, an unemancipated minor's residence is presumed to be that of her parents, or, as the case may be, legal guardian. *Matter of Whiteman*, 24 Educ. Dep't Rep. 337, 339 (1985); *Matter of Takeall*, 23 Educ. Dep't Rep. 475, 477 (1984); *Matter of Fichtner*, 22 Educ. Dep't Rep. 119, 120 (1982). It follows then that there is no presumption that the child's residence is wherever the child is presently located. Given that a New York State resident between the ages of five and 21 is not entitled to receive a free education at any public school in the State, *see Matter of Fichtner*, 22 Educ. Dep't Rep. at 120 (noting that a school district's obligation to provide a tuition-free education is limited to students whose parents or legal guardians reside in the district); *see also Matter of Fichtner*, 22 Educ. Dep't Rep. at 120; *Matter of Wandas*, 21 Educ. Dep't Rep. 577, 579 (1982), that the minor's residence is presumed—rebuttably—to be that of her parents or legal guardian, *Matter of Takeall*, 23 Educ. Dep't Rep. at 477; *Matter of Fichtner*, 22 Educ. Dep't Rep. at 120; *Matter of Bunk*, 22 Educ. Dep't Rep. 38, 39 (1982); *Matter of Schumer*, 21 Educ. Dep't

Rep. 640, 642 (1982), and that State law authorizes local boards of education to admit nonresidents upon the consent of and under terms set by the local board, *Matter of Fichtner*, 22 Educ. Dep't Rep. 119; *Matter of Schumer*, 21 Educ. Dep't Rep. 640, it follows that State law created no legitimate expectation that Jennifer could receive her public school education in the New Hartford Central School District. At best, Jennifer had a unilateral expectation of continuing her education in the New Hartford Central School District subject to her proving that her actual residency was in New Hartford, *Matter of Whiteman*, 24 Educ. Dep't Rep. at 339; *Matter of Takeall*, 23 Educ. Dep't Rep. at 477; *Matter of Fichtner*, 22 Educ. Dep't Rep. at 120; *Matter of Bunk*, 22 Educ. Dep't Rep. at 39, or to her gaining the consent of the local board of education, upon terms set by it, to her remaining in the New Hartford school system. It bears noting that, given the presumption regarding an unemancipated minor's residence, plaintiff here could not have been deprived of a public school education in the Utica public schools without due process of law. Moreover, the result here would be different perhaps if New York law provided that a child is entitled to receive a free education anywhere in the State subject to a determination that her education should more properly be gotten elsewhere in the State—in other words, if there was a rebuttable presumption that the child's residency for educational purposes was wherever the child was presently located, thereby placing the burden on each school district to establish that one of its students was not a bona fide resident. Such is not the law, however.

Conclusion

Because plaintiff Jennifer Rogowski did not have a property interest in continuing her education in the public schools of the New Hartford Central School District, the procedural protections afforded by the due process clause of the 14th amendment were not triggered. Accordingly, upon reconsideration of the court's prior order, defendant's motion for summary judgment is

granted in its entirety and the complaint is dismissed.

IT IS SO ORDERED.