DUNBAR E. CATLIN, an Infant, by DANIEL CATLIN et al., His Parents and Natural Guardians, et al., Respondents, v THOMAS SOBOL, as Commissioner of Education of the State of New York, et al., Appellants.

Third Department, March 22, 1990

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Nancy A. Spiegel* and *Peter H. Schiff* of counsel), for Thomas Sobol, appellant.

*Hogan & Sarzynski (Edward J. Sarzynski* of counsel), for Board of Education of the Edmeston Central School District, appellant.

*Anderson, Banks, Curran & Hollis (Lawrence W. Thomas* of counsel), for respondents.

*Norman H. Gross (Cynthia Plumb Fletcher* of counsel), for New York State School Boards Association, Inc., *amicus curiae.*

## OPINION OF THE COURT

CASEY, J.

Plaintiff Dunbar E. Catlin (hereinafter Dell) was born in 1973 with Down's syndrome. His parents, who resided in the Town of Bedford, Westchester County, elected to place Dell in the family home of Samuel and Elizabeth Conde in the Town of Edmeston, Otsego County. The Condes are certified by the State Department of Social Services to provide care "at board" for children up to the age of 18. Dell has lived continuously with the Condes since two weeks after his birth. Although the Condes make the decisions regarding Dell's day-to-day care, his parents pay for the cost of Dell's care at the Condes' home and they have not surrendered any of their parental rights or authority over Dell.

Dell began attending the Edmeston schools in 1978. The Bedford Central School District reimbursed the Edmeston Central School District for Dell's tuition until 1985, when Dell's parents moved from the Town of Bedford to Massachusetts. In July 1985, the Edmeston Central School District informed Dell's parents that tuition would have to be paid if Dell was to continue attending the Edmeston schools. Dell's parents appealed to defendant Commissioner of Education who concluded that Edmeston was not Dell's "actual and only residence" and that, therefore, he was not a resident of the Edmeston Central School District *(see,* Education Law § 3202 [4] [b]). Thus, the appeal was denied.

Dell's parents thereafter commenced an action in Federal District Court challenging the constitutionality of the residency requirement. The present action for a judgment declaring Dell to be a resident of the Edmeston Central School District was commenced by Dell and his parents following the application of the abstention doctrine by the United States Court of Appeals for the Second Circuit in the Federal action upon the theory that the meaning of "actual and only residence" in Education Law § 3202 (4) (b) was a potential controlling question of State law *(Catlin v Ambach,* 820 F2d 588). Supreme Court granted summary judgment to plaintiffs, concluding that "[t]he fact that Dell's entire life has been spent with the Condes satisfied a simple reading of 'actual and only [residence]' " (141 Misc 2d 169, 172). Defendants now appeal.

■ Initially, the parties disagree as to the appropriate scope of review. The Commissioner contends that the rational basis test must be applied to review his interpretation of the statute and his determination that Dell is not entitled to a tuition-free education in the Edmeston Central School District. Plaintiffs contend that because this is a plenary action for declaratory relief, the court should construe the statute and determine whether Dell is a resident of the Edmeston Central School District. We agree with the Commissioner.

Plaintiffs initially appealed to the Commissioner, seeking a determination that Dell was entitled to a tuition-free education. Dissatisfied with the result of their appeal, plaintiffs went into Federal court to challenge the constitutionality of the statute relied on by the Commissioner, rather than seek State court review of the Commissioner's determination. That plaintiffs were thereafter required by Federal law to resort to an action in State court to resolve a potentially controlling issue of State law involving the propriety of the Commissioner's determination should not result in a different standard of review than that which would have been applied had plaintiffs sought direct State court review of the determination.

Education Law § 3202 (1) provides that a person over the age of five and under the age of 21 "is entitled to attend the public schools maintained in the district in which such person resides without the payment of tuition". Education Law § 3202 (4) contains provisions concerning the cost of instruction of pupils placed in family homes. The provision at issue here states: "Children cared for in free family homes and children cared for in family homes at board, when such family homes

shall be the actual and only residence of such children and when such children are not supported and maintained at the expense of a social services district or of a state department or agency, shall be deemed residents of the school district in which such family home is located" (Education Law § 3202 [4] [b]). Because it is undisputed that Dell lives in a family home at board and that he is supported and maintained solely at the expense of his parents, the only remaining question is whether the family home is Dell's "actual and only residence".

■ The Commissioner has concluded that the residency requirement contained in the statutory provision at issue is substantially the same as that contained in the general free education provision of Education Law § 3202 (1). Thus, according to the Commissioner, Dell's residency must be determined in light of the long-standing rebuttable presumption that a child's residence is that of his parents (see, Matter of Horowitz v Board of Educ., 217 App Div 233, 238). Supreme Court, however, held that Education Law § 3202 (4) created a special class of pupils, those residing in family homes, who were not subject to the presumption. Based upon a "simple reading" of the statute, the court concluded that because Dell had always lived in the family home, that was his "actual and only residence" within the meaning of Education Law § 3202 (4) (b). The Court of Appeals has recognized that there may be "practical problems of administration engendered by the present statutory formulation" contained in Education Law § 3202 (4), but has cautioned against "judicial assistance in their minimization" (Matter of Jeter v Ellenville Cent. School Dist., 41 NY2d 283, 287, 288). We are of the view that Supreme Court erred when it substituted its interpretation of Education Law § 3202 (4) (b) for that of the Commissioner, instead of reviewing the Commissioner's interpretation for rationality and reasonableness (see, Matter of Robins v Blaney, 59 NY2d 393, 397; Matter of Lezette v Board of Educ., 35 NY2d 272, 281-282).*

---

* We recognize the emerging rule which accords no deference to an administrative officer's interpretation of a statute in cases of " 'pure statutory reading and analysis' " (Matter of De Mayo v Rensselaer Polytech Inst., 74 NY2d 459, 462, quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). But in light of the Commissioner's role in this State's educational system (see, Matter of Schuylerville Cent. School Dist. v Commissioner of Educ. of State of N. Y., 152 AD2d 241), and since knowledge and understanding of operational practices and an evaluation of factual data are

■ Because the term "residence", when used in a statute such as the one at issue, is equivalent to "domicile" *(see, Matter of Seitelman v Lavine,* 36 NY2d 165, 171; *State of New York v Collins,* 78 AD2d 295, 297), the inclusion of the words "actual and only" create doubt and ambiguity as to the meaning of the phrase "actual and only residence". Plaintiffs contend that the Legislature intended the phrase to include those students who have continuously lived in a family home at board for almost their entire life, as Dell has. Such a construction avoids the residency presumption accorded to other students who live away from their parents and thereby increases the financial burden of the school district within which the family home is located. Such a result conflicts with the legislative intent of the paragraph which precedes the one at issue *(see, Matter of Jeter v Ellenville Cent. School Dist., supra,* at 285). The Commissioner's interpretation, in contrast, treats pupils living in family homes at board the same as other pupils who live away from their parents, imposing the financial burden of a free education on the district where the family home is located only when the presumption that the child's residence is that of his parents is rebutted. We find nothing irrational or unreasonable in the Commissioner's statutory interpretation.

■ The Commissioner also determined that the presumption of Dell's residency with his parents had not been rebutted because his parents continued to provide financial support for Dell and they retained the right to revoke their delegation of parental authority to the Condes. In effect, the Commissioner has used the rebuttable presumption to impose upon a person who lives in this State and seeks a free public education pursuant to Education Law § 3202 the requirement that his or her nonresident parents default on their obligation to support their child and relinquish their parental rights. The Legislature has not seen fit to impose such a requirement, and we conclude that the Commissioner cannot do so under the guise of the rebuttable presumption of residency. Accordingly, we

---

involved in the statute's application, we are of the view that the traditional rule is applicable *(see, Matter of Howard v Wyman,* 28 NY2d 434, 438). Nevertheless, because " 'legislative intent is the great and controlling principle' " *(Ferres v City of New Rochelle,* 68 NY2d 446, 451, quoting *People v Ryan,* 274 NY 149, 152 [emphasis in original]), we have accorded deference to the Commissioner's interpretation only as a starting point for our analysis and not as a substitute for our consideration of the spirit and purpose of the statute and the objective to be accomplished.

agree with the result reached by Supreme Court, but not the rationale.

As noted above, domicile and residence are equivalent for the purposes of the statute at issue and, therefore, the residency requirement is not satisfied by mere bodily presence, no matter how long a period (see, Unanue v Unanue, 141 AD2d 31, 34); there must be physical presence and the requisite intention to make the locality one's fixed and permanent home (supra, at 35; see, Matter of Brunner, 41 NY2d 917, 918). The Commissioner has often applied this test in determining residence under Education Law § 3202 (e.g., Matter of Whiteman, 24 Ed Dept Rep 337, 340; Matter of Bunk, 22 Ed Dept Rep 38, 39). Nevertheless, in the case at bar, the Commissioner focused exclusively on the natural parents' retention of their legal right to control Dell, claiming that this represents a consistent application of accepted principles (but see, Matter of Board of Educ. v Allen, 29 AD2d 24, 28 ["It appears * * * that the Commissioner has at various times given weight to the fact of parental control as opposed to the legal question of who can exercise such control and at other times has given no consideration to such control"]). We have explained that in determining the question of domicile, "[n]o single factor is controlling and the unique facts and circumstances of each case must be closely considered" (Matter of Gadway, 123 AD2d 83, 85). The same principle should apply in determining whether the presumption of Dell's residence with his parents has been rebutted.

The physical presence requirement has concededly been satisfied in this case. Although intention can be difficult to ascertain when, as here, the person may be incompetent, the case of Matter of Seitelman v Lavine (36 NY2d 165, supra) provides a crystal-clear example of the scope of the necessary inquiry and the relevant factors to be considered. In Seitelman, the petitioner was a mentally retarded 24 year old who had resided with his parents in New York until he began attending a residential facility in Vineland, New Jersey. In determining whether the petitioner was entitled, as a New York resident, to certain aid under the Social Services Law, the Court of Appeals considered a broad range of factors, including the purpose for the petitioner's move to Vineland and the fact that his parents maintained a room for him in their home where he regularly visited. The court found that "the record does not manifest any evidence that petitioner, or

his parents, intend for petitioner to remain at Vineland permanently" *(supra,* at 171).

The undisputed evidence in the case at bar stands in stark contrast to that in *Seitelman (supra).* Dell has lived with the Condes for virtually his entire life and he concededly considers it his home. Dell has never visited his parents' home and they do not have a room for him there. Dell's placement with the Condes was not for the purpose of attending the Edmeston schools or receiving any particular treatment or rehabilitation. Rather, Dell's parents decided that the Condes were better able than they to provide all of the necessary day-to-day care required for a child with Down's syndrome. There is no express time limit on the contractual relationship between Dell's parents and the Condes, and there is nothing to suggest that the Condes or Dell's parents ever contemplated a change in either Dell's condition or his parents' circumstances which would result in a change of actual custody. It is noteworthy that when Dell's parents moved out of this State, they did not move Dell to a family home closer to them. In sum, the Condes were delegated the responsibility of being Dell's de facto parents and he so considers them. The parties' words and deeds manifest a clear and unmistakable intent that Dell's placement with the Condes is permanent, and his natural parents' continued financial support for their child and retention of the legal right to remove Dell from the family home are insufficient, standing alone, to defeat this clear showing. We conclude, therefore, that although the Commissioner rationally construed the term "actual and only residence" as including the rebuttable presumption that a child's residence is that of his parents, there is no rational process by which the Commissioner could conclude, upon all of the relevant facts and circumstances in this case, that the presumption has not been rebutted.

The dissent relies upon the "initial and continuing responsibility for Dell's education" which was assumed by Bedford Central School District prior to Dell's parents' move to Massachusetts. The question of whether the Bedford Central School District was ever Dell's "home" district has not been litigated, either at the administrative level or in the courts. Because there has never been a determination by the Commissioner or the courts that the Bedford Central School District was legally responsible for Dell's tuition, its assumption of that responsibility was purely voluntary and has no bearing on the legal issue presented in this case. Until Dell's parents moved to

Massachusetts, Dell received the free public education to which he was entitled under the Education Law, and his parents had no reason to question the source of the funding for that education. The issue of legal responsibility for Dell's education arose only when Dell was denied a continuing free public education despite the absence of any change in circumstances except that his parents, with whom Dell never resided, moved out of New York. Thus, while we agree with the dissent's conclusion that there has been no relevant change of circumstances, we cannot agree with its further conclusion that defendants were therefore justified in terminating Dell's right to a free public education. Supreme Court's order and judgment should be affirmed.

KANE, J. (dissenting). We agree with the majority's analysis and its conclusion that there is nothing unreasonable or irrational in the Commissioner's interpretation of Education Law § 3202 and his finding that Dell was not a resident of the Edmeston Central School District and thus not entitled to a free tuition education at the expense of the district. We depart from the decision of the majority where it finds that the parents have overcome the concomitant presumption that a child's residence is that of his parents.

The presumption may be overcome by demonstrating that the parent does not exercise control over the child (see, Matter of Board of Educ. v Allen, 29 AD2d 24, 28), which includes providing financial support. This interpretation of the statute, the presumption and the requirements to overcome that presumption are well established (see, Matter of Horowitz v Board of Educ., 217 App Div 233, 238) and are, apparently, accepted by the majority. Our difficulty in accepting their ultimate conclusion is that we are unable to unearth any alteration in the factual setting which imposed initial and continuing responsibility for Dell's education upon his "home" district, Bedford Central School District, other than his parents' voluntary change of residence from that school district to Massachusetts. This change of residence is, clearly, the only change in circumstances and the precipitating cause of this and related litigation. Although Dell still resides in the family home with the Condes and remains under their day-by-day care and control, his parents have been and remain financially responsible for his care and maintenance and occupy the same

parental position they have occupied since the original contract was negotiated between the Committee on the Handicapped at the Bedford Central School District and the Edmeston Central School District in 1978. These facts, superimposed upon the continuing financial support of Dell, provide a sufficient basis to support the Commissioner's determination that the presumption has not been overcome.

On this issue, we are unable to accept the majority's conclusion that the Bedford Central School District's original assumption of responsibility for Dell's education was purely "voluntary" simply because that issue was never litigated or determined by any competent administrative or judicial authority. The record supports a contrary conclusion which, in our view, has direct bearing on the legal issue presented here. A letter dated June 1, 1978 from the director of pupil personnel of Bedford Central School District to the chairman of the Committee on the Handicapped at Edmeston Central School District stated: "Since legally [Dell] is entitled to the service that you prescribe through your Committee on the Handicapped, and since legally the child is a resident of this district, the Bedford Central School District will be legally responsible for the expenses involved." Therefore, we remain unpersuaded that the recognition and implementation of an acknowledged legal obligation to disburse public funds falls within the ambit of a voluntary act.

Nor can we agree with the majority's conclusion that the Commissioner is, in effect, requiring nonresident parents to "default on their obligation to support their child and relinquish their parental rights" in order to rebut the residency presumption. Dell's parents remain free to establish a residence of their choice notwithstanding that the residence may incidentally create or preclude the opportunity to attend a particular school (see, Matter of Moncrieffe, 121 Misc 2d 395, 397; see also, Plyler v Doe, 457 US 202). It was in exercising this freedom that Dell's parents left their home district and the attendant benefit of the Bedford Central School District's responsibility over Dell's education in the Edmeston Central School District.

Accordingly, we would reverse the order and judgment appealed from, grant summary judgment in favor of defendants, make a declaration in their favor and remit the matter

to Supreme Court for a determination of the amount owed for tuition.

WEISS and HARVEY, JJ., concur with CASEY, J.; MAHONEY, P. J., and KANE, J., dissent and vote to reverse in an opinion by KANE, J.

Order and judgment affirmed, with costs.