*555 OPINION OF THE COURT
Hancock, Jr., J.
The general rule is that a school district must provide free education to children whose parents or legal guardians reside within the district (see, Education Law § 3202 [1]; People ex rel. Brooklyn Children’s Aid Socy. v Hendrickson, 54 Misc 337, affd 125 App Div 256, affd 196 NY 551). Education Law § 3202 (4) (b) provides that ”[c]hildren cared for in free family homes and children cared for in family homes at board, when such family homes shall be the actual and only residence of such children and when such children are not supported and maintained at the expense of a social services district or of a state department or agency, shall be deemed residents of the school district in which such family home is located” (emphasis added). This appeal concerns the obligation of a school district to furnish tuition-free education to a mentally handicapped child whose parents reside outside of the district and who is cared for at their expense in a family home at board located within the district.
*556 In an administrative appeal from the district’s refusal to provide free education in this case, defendant Commissioner of Education upheld the district. In rejecting the argument that the child was entitled to free education under Education Law § 3202 (4) (b) the Commissioner: (1) interpreted the phrase "actual and only residence of such children” as embodying substantially the same concepts as the general residency requirement in Education Law § 3202 (1) including the established common-law rule that a child’s residence is presumed to be that of the parents, and (2) found that under this interpretation of section 3202 (4) (b), in the circumstances of this case, the presumption had not been rebutted.
 In the instant declaratory judgment action, the Appellate Division agreed unanimously with the Commissioner’s legal interpretation of section 3202 (4) (b). The three-Justice majority, however, determined that on this record the presumption that the child’s residence was that of his parents had been rebutted and that the district was obligated to furnish tuition-free education. On defendants’ appeal pursuant to CPLR 5601 (a), we now reverse. We agree with the Appellate Division’s interpretation of the statute. For reasons which follow, however, we disagree with that court’s holding that the presumption was overcome and its rejection of the Commissioner’s conclusion that the child’s residence was with the parents.
I
Plaintiff, Dunbar E. Gatlin (Dell), was born on April 22, 1973. He is afflicted with Down’s Syndrome, a congenital abnormality causing varying degrees of mental retardation. His parents, plaintiffs Daniel and Dundeen Catlin, who were then residents of the Town of Bedford, Westchester County, decided that Dell’s needs could best be met if he were given special care outside of their home. Accordingly, on May 7, 1973 they placed Dell with a "family home at board” operated by Samuel and Elizabeth Conde in Edmeston, New York. The Condes are licensed by the Social Services Department to care for handicapped children such as Dell until they reach the age of 18. Since his placement in 1973, Dell has lived continuously with the Condes and presumably will continue to do so until his 18th birthday.
The Gatlins bear the entire cost of Dell’s support and maintenance. They pay a monthly fee ($900 a month in 1986) *557 for Dell’s room and board, and also for his clothing, medical expenses and incidental needs. They have surrendered none of their legal parental authority over Dell and could remove him from the Condes’ home at any time. The Gatlins visit Dell in Edmeston three or four times a year.
When Dell became five years old in 1978, he entered the educational program for handicapped children in the Edmeston school district under a tuition-reimbursement arrangement with the district where Dell’s parents resided, Bedford Central School District. The Bedford district determined that "since legally [Dell was] a resident of this district” it was obligated to pay the Edmeston district for the expenses of Dell’s education. On May 6, 1980, the Gatlins requested a meeting with the Bedford Committee on the Handicapped to discuss Dell’s education. At the meeting which ensued, plaintiff Daniel Catlin informed the committee that he had visited the Edmeston district and found Dell’s educational program to be satisfactory.
The Bedford district paid for Dell’s tuition until 1985 but declined further reimbursement to Edmeston when the Gatlins moved from Bedford to the State of Massachusetts. The Gatlins then requested that Edmeston admit Dell on a tuition-free basis and upon Edmeston’s refusal, appealed to the Commissioner. The Commissioner sustained Edmeston’s position.
Upon receipt of the Commissioner’s decision, the Gatlins commenced an action pursuant to 42 USC § 1983 in Federal District Court for the Northern District of New York alleging that the New York residency statute, as applied, is constitutionally infirm. After a hearing, the District Court determined that the residency statute, as applied by the Commissioner, violates the Equal Protection Clause and granted summary judgment to the Catlins (Catlin v Ambach, 644 F Supp 161 [ND NY 1986]). On appeal, the United States Court of Appeals for the Second Circuit vacated and remanded with instructions to retain jurisdiction "pending a resolution on the state law issue by the New York state courts.” (Catlin v Ambach, 820 F2d 588, 591 [2d Cir 1987].) The Second Circuit determined that because there was a potentially controlling question of State law — i.e., the meaning of "actual and only residence” in Education Law § 3202 (4) (b) — the Federal courts should abstain.
The Gatlins, individually and on behalf of Dell, then commenced this action for a declaratory judgment in Albany *558 County. A separate action brought against them by the Edmeston district in Otsego County to recover Dell’s unpaid tuition was moved to Albany County and consolidated with the declaratory judgment action. Supreme Court granted summary judgment to the Catlins. It rejected the Commissioner’s interpretation of Education Law § 3202 (4) (b) as incorporating the presumption of residency and held that section 3202 (4) (b) creates a class of children who are not presumed to reside with their parents (141 Misc 2d 169, 172). The Appellate Division, as noted, in affirming with a divided court, disagreed unanimously with Supreme Court’s interpretation of the statute. Although all members of the court accepted the Commissioner’s view that the presumption of residence was embodied in the statute, a majority disagreed with his application of the statute in the circumstances of this case (Catlin v Sobol, 155 AD2d 24).
II
In deciding on the proper interpretation of the phrase "actual and only residence” in Education Law § 3202 (4) (b) we first look to the particular words for their meaning, both as they are used in the section and in their context as part of the entire statute (see, Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals, 77 NY2d 114; Price v Price, 69 NY2d 8, 13). But we may also consider the legislative history of the enactment and how it has been interpreted, bearing in mind "that in 'the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle’ (People v Ryan, 274 NY 149, 152)” (Ferres v City of New Rochelle, 68 NY2d 446, 451). Here, we have little difficulty in concluding, as did the Appellate Division, that the Commissioner’s interpretation is correct.
The question of how the Education Law is intended to operate in a case under section 3202 (4) (b) turns on the meaning of the word "residence” in the phrase "actual and only residence”. The Commissioner’s contention is that the word should be given its generally accepted common-law meaning — the same sense in which the term has been traditionally understood by the courts (see, e.g., Matter of Board of Educ. v Allen, 29 AD2d 24; Matter of Horowitz v Board of Educ., 217 App Div 233, 238-239) and by the State Education Department in applying various sections of Education Law *559 § 3202.[1] If given this interpretation, the term carries with it the established " 'presumption that the residence of the child is the residence of the parents. This presumption may be overcome by proof showing that the parties have surrendered parental control and that such control is being exercised by some other person with whom the child [lives].’ ” (Matter of Board of Educ. v Allen, supra, at 28, quoting Matter of Kuppler, 33 NY St Dept Rep [Educ] 407, 409; see, Matter of Horowitz v Board of Educ., supra, at 238-239.)
Plaintiff contends, however, that "actual and only residence” as used in section 3202 (4) (b) is virtually synonymous with "physical presence”. This is the interpretation adopted by Supreme Court in its holding that relinquishment of parental authority is not a relevant consideration and that "a clear reading of section 3202 (4) (b) created a class of children who are not presumed to reside with their parents.” (141 Misc 2d 169, 172, supra [emphasis added].) Plaintiff points to no language in the statute supporting the argument that "residence” in section 3202 (4) (b) should be given this special meaning, one that is different from the usual construction which has been given the term in various Education Law provisions (see, n 1, supra). Adopting plaintiffs interpretation would offend the accepted rules of construction that statutory words are generally construed according to their natural and obvious sense (McKinney’s Cons Laws of NY, Book 1, Statutes § 94) and that where the same word or phrase is used in different parts of a statute it will be presumed to be used in the same sense throughout (McKinney’s Statutes § 236).
The meaning of the term "residence” in section 3202 (4) (b) adopted by the Commissioner is consistent with the general scheme of Education Law § 3202 — the statute which sets out the framework for determining when and under what circumstances a school district is obligated to provide free education. The general rules under section 3202 are that a school district *560 is bound to furnish tuition-free education only for children whose parents or legal guardians reside within the district (see, Matter of Buglione, 14 Ed Dept Rep 220, 221 [1975]); that where the parents or guardians reside outside of the district the child presumably resides outside the district also and is not entitled to free education; and that this presumption may be overcome by showing that the parents or guardians have given up parental control and that the child’s permanent domicile — i.e., the child’s "actual and only residence” — is within the district (see, Matter of Horowitz v Board of Educ., 217 App Div 233, supra; Matter of Buglione, supra, at 222-223; Matter of Van Curran, 18 Ed Dept Rep 523, 524).
Under the Commissioner’s interpretation of the statute, these general rules as to residency apply no differently in the particular circumstances covered by section 3202 (4) (bK-i.e., where the child is living in a free family home or a family home at board and the parents reside outside the district. This construction is consistent with the general scheme of the free education statute and furthers its purpose: mandating the provision of free education by a school district for its resident children but assuring that nonresident parents who have children within the district must pay tuition for them unless the presumption is overcome and it is established that their children’s "actual and only residence” is within the district.
There is no reason why a different rule should apply merely because a child of nonresident parents is being cared for within the district in a free family home or a family home at board and, thus, comes within section 3202 (4) (b). Indeed, the legislative history of the section demonstrates that the language "actual and only residence” was intended to assure that no different rule should be applied in circumstances covered by the section and that a district’s responsibility to provide free education would be limited to cases where the presumption is overcome and the child has established a permanent domicile in the home of the family providing the care (see, Bill Jacket, L 1973, ch 867, Mem in support of State Dept of Educ ["This bill * * * enacts a new subdivision (of Education Law § 3202) which provides * * * (that n)on resident children cared. for in family homes and not supported by a social services district may be required to pay tuition. * * * The principal purpose of the bill is to relieve school districts of the obligation * * * to bear the financial burden of educating nonresident children.”]).
*561 In sum, we agree with the Commissioner’s reading of section 3202 (4) (b), which is reasonable and entirely consistent with the legislative purpose of obligating school districts to provide free education only for children who reside within the district. The interpretation urged by plaintiif — that a child’s "physical presence” in the district, standing alone and without regard to the retention of parental control and supervision, obligates a school district to provide free education — imposes a far heavier financial responsibility on districts in cases where the child is staying in a family home and comes under section 3202 (4) (b) than in other circumstances involving children of nonresident parents.[2] There appears to be no plausible reason for imposing these additional and unnecessary burdens on school districts in situations coming under section 3202 (4) (b).
Ill
We turn to the propriety of the Commissioner’s decision that the presumption that Dell resides with his parents was not overcome. We note that the question of residency involves a determination of a mixed question of law and fact (see, Matter of Board of Educ. v Allen, supra, at 27-29; Matter of Van Curran, supra, at 524) and that where, as here, plaintiif has chosen to appeal the district’s decision to the Commissioner, the sole question on judicial review of his determination is whether it is arbitrary and capricious and without rational basis (see, Education Law § 310; Matter of Gundrum v Ambach, 55 NY2d 872, 873; Matter of Strongin v Nyquist, 44 NY2d 943, 945, appeal dismissed and cert denied 440 US 901).[3]
From the record, it appears that the Gatlins have continuously assumed full financial responsibility for Dell. Indeed, Edmeston Central School District never considered Dell a resident and, thus, never assumed the costs of Dell’s education. From the time Dell began school, the parents’ school *562 district — then Bedford Central School District — had assumed the costs. Although the parents have delegated Dell’s day-today care to the Condes, they retain complete legal authority over him and could revoke or modify the terms of the Condes’ custody arrangement at any time. Moreover, the Condes’ authority to care for Dell will terminate when he becomes 18 years old on April 22, 1991. Thus, it cannot be said as a matter of law that Dell has established a permanent residence with the Condes (see, Matter of Horowitz v Board of Educ., supra, at 238-239; Matter of Duffy, supra, at 26). Finally, as noted by the Commissioner in his decision, the Gatlins "have taken an active role in meeting with the committee of the handicapped of the Bedford school district to plan their son’s educational program”. On these facts, we cannot conclude that the Commissioner’s determination that the Condes’ family home was not Dell’s "actual and only residence” was without a rational basis.[4]
It is contended, nevertheless, that the Commissioner’s decision lacks a rational basis because Dell has resided continuously with the Condes in the Edmeston district since shortly after his birth, does not have a room in the Gatlins’ home, and, indeed, has never visited them. Accepting this argument, we believe, would be tantamount to adopting plaintiffs’ contention that the phrase "actual and only residence” in section 3202 (4) (b) does not embody the presumption that the child’s residence is that of his parents and that "physical presence”, without more, satisfies the statute. For the reasons already noted (see, part II, supra), we believe such a rule should not be adopted.
Accordingly, the order should be reversed, with costs, plaintiffs’ motion for summary judgment denied, defendants’ cross motion for summary judgment granted, Dunbar Elliot Gatlin *563 declared not to be a resident of the Edmeston Central School District, and the case remitted to Supreme Court, Albany County, for a determination of the tuition owed.

. The Education Department has historically embraced the presumption that the residence of a child is with his or her parents (see, Matter of Delgado, 24 Ed Dept Rep 279; Matter of Bunk, 22 Ed Dept Rep 38; Matter of Shelmidine, 22 Ed Dept Rep 206; Matter of Fichtner, 22 Ed Dept Rep 119; Matter of Van Curran, 18 Ed Dept Rep 523; Matter of Buglione, 14 Ed Dept Rep 220; Matter of Duffy, 75 St NY Dept Rep [Educ] 25; see also, Matter of Staulcup, 20 Ed Dept Rep 11; Matter of Tiger, 16 Ed Dept Rep 178; Matter of Kirby, 10 Ed Dept Rep 139; Matter of Morello, 9 Ed Dept Rep 130 [cases finding presumption rebutted where parents relinquished care and control of child]).

. There is no dispute that Edmeston school district will continue to provide educational services to Dell. We stress that what is at issue here is only whether Edmeston school district must bear the costs of Dell’s education (cf., Rabinowitz v New Jersey State Bd. of Educ., 550 F Supp 481, 483 [D NJ 1982]).

. [3] We agree with the Appellate Division that the fact that plaintiffs initially challenged the Commissioner’s ruling in Federal court and are now proceeding by declaratory judgment action to resolve an issue of State law does "not result in a different standard of review than that which would have been applied had plaintiffs sought direct State court review of the determination.” (155 AD2d 24, 27.)

. We are not deciding the issue of residency as a factual matter, as the dissent suggests. Rather we are reviewing the Commissioner’s determination under a rationality test. On this record, the determination is rational. The authority cited by the dissent (dissenting opn, at 565) to support its conclusion that the presumption was overcome here is inapposite. In Matter of Deborah V (29 Ed Dept Rep 176), the Commissioner found that the 16-year-old child’s parents had relinquished custody and control and, thus, that the presumption that the child resided with his parents was overcome. There, the findings were that the father allegedly had abused the child before he left the family home, the father had removed the child as a dependent for purposes of public assistance and, for over a year, had had no contact with the child; the mother had moved to Florida and had not seen the child for over one year.