Daniel CATLIN and Dundeen Catlin, individually and as parents and natural guardians of Dunbar Elliott, a/k/a "Dell" Catlin, a handicapped child, Plaintiffs–Appellees,

v.

Thomas SOBOL, as Commissioner of Education of the State of New York, John F. Holdorf, Superintendent of Schools of the Edmeston Central School District, and the Board of Education of the Edmeston Central School District, Defendants–Appellants.

Nos. 1225, 1226, Dockets 95–7912, 95–7914.

United States Court of Appeals, Second Circuit.

Argued March 26, 1996.

Decided Sept. 4, 1996.

**1114**

Nancy A. Spiegel, Assistant Attorney General, Albany, NY (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Daniel Smirlock, Assistant Attorney General, Albany, NY, of counsel), for Defendant–Appellant Commissioner of Education.

Edward J. Sarzynski, Binghamton, NY (Hogan & Sarzynski, L.L.P., Binghamton, NY, of counsel), for Defendants–Appellants John F. Holdorf and the Board of Education of the Edmeston Central School District.

Lawrence W. Thomas, Mount Kisco, NY (James P. Drohan, Anderson, Banks, Curran & Donoghue, Mount Kisco, NY, of counsel), for Plaintiffs–Appellees.

Jay Worona, General Counsel, Albany, NY (Pilar Sokol, Albany, NY, of counsel), for *amicus curiae* The New York State School Boards Association, Inc.

Before: NEWMAN, Chief Judge,
PARKER, Circuit Judge, and NICKERSON, District Judge.*

PARKER, Circuit Judge:

## I. BACKGROUND

Defendants appeal a final judgment entered in the Northern District of New York, Howard G. Munson, *Judge,* holding that New York Education Law § 3202(4)(b) violates the Due Process Clause of the Fourteenth Amendment of the Constitution. *See Catlin v. Sobol,* 881 F.Supp. 789 (N.D.N.Y.1995). On appeal, defendants argue that the court erred in granting plaintiffs' motion for summary judgment on the Due Process claim. Plaintiffs contend that the Equal Protection

Clause, the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1401 *et seq.* ("IDEA"), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provide alternate bases for affirming the district court. We reverse because we find that the district court's judgment was based on an incorrect application of the "irrebuttable presumption" doctrine.

### A. *Facts*

The facts in this case are undisputed. Plaintiff Dunbar Elliot Catlin (Dell) was born in 1973 in New York City. Dell was born with Down's Syndrome. His parents, Daniel and Dundeen Catlin, are also plaintiffs. In 1973, the Catlins resided in Bedford, New York.

When Dell was three weeks old, his parents moved him from the hospital where he was born to a "family home at board" operated by Samuel and Elizabeth Conde in Edmeston, New York. The Condes operate a home for children with Down's Syndrome. They have experience and expertise caring for Down's Syndrome children and have provided a home for approximately twenty-seven children over the years. The Catlins sent Dell to live with the Condes because of their expertise in caring for Down's Syndrome children. The Condes do not provide schooling for Dell or the other children, and choice of schools was not a factor in choosing to send Dell to live with the Condes. The Catlins have always intended that Dell remain permanently with the Condes.

Dell lived with the Condes his entire life until 1991.[1] He has never lived with his biological parents. He has never visited their home. Dell refers to the Condes as "mama" and "dad" and has extended family relationships with the Condes' natural children. He has shared a room with another child afflicted with Down's Syndrome; these boys treat each other as brothers.

The Condes are responsible for the day-to-day decisions regarding Dell's care: they take him to the doctor, dentist and barber.

---

* The Honorable Eugene H. Nickerson, of the United States District Court for the Eastern District of New York, sitting by designation.

**1.** Five years after the original suit was filed, the Condes retired. Dell moved in with another

family that provides the same type of care and environment for Dell. The move does not affect the analysis in this case.

Dell's school deals directly with the Condes regarding the day-to-day aspects of his education; they call the Condes when Dell is sick, or if they need permission to take him on a field trip. He is integrated in the community of Edmeston: he knows the postman, the neighbors and the shopkeepers.

Despite the Condes daily supervision of Dell, the Catlins retain parental responsibility for him. In the context of his education, they have participated in meetings to plan Dell's special educational program. In addition, the Catlins are financially responsible for Dell. They pay the Condes $900 a month for Dell's room and board. They also pay for Dell's clothing, medical and dental costs, and other incidentals such as a new bicycle.

When Dell reached school age in 1978, and from time to time thereafter, the Catlins worked with the Committee on the Handicapped in Bedford, New York to plan Dell's educational program. As a result of these meetings, Dell was enrolled in the Primary Trainable Mentally Retarded Program at the Board of Cooperative Educational Services— Mt. Vision School in Green County, within the Edmeston school district. From 1978 until 1985, the Bedford school district, where the Catlins resided, financed Dell's special education in Edmeston. When the Catlins moved from Bedford to Massachusetts, the Bedford school district stopped paying for Dell's education. The Edmeston school district subsequently notified the Catlins that Dell would not be permitted to continue in the public school special education program unless the Catlins' new school district, or the Catlins themselves, assumed financial responsibility for Dell's education.

The Catlins appealed the district's decision to the Commissioner of Education, who affirmed the school district in a written decision in January of 1986. The Commissioner ruled that under New York Education Law § 3202,[2] a district is required to fund a child's education if the child resides in the district. When a child, such as Dell, lives in a family home at board, the district must fund that child's education if the home is his "actual and only residence".

In deciding whether Edmeston must fund Dell's education, the Commissioner applied the common law presumption that a child resides with his biological parents even when the child is not physically present in their home. The Commissioner explained that this presumption can only be overcome by a showing that the parents neither exercise control nor maintain financial responsibility for the child. Pointing to the Catlins' ongoing parental responsibility for Dell, the Commissioner determined that Dell resided with the Catlins. The Commissioner therefore concluded that the Condes' home was not Dell's "actual and only residence," and thus the district would not be required to provide Dell with a free education. The Catlins filed suit in federal court seeking a reversal of the Commissioner's decision.

### B. Procedural History

In federal court, the Catlins challenged the constitutionality of the Commissioner's interpretation of the "actual and only residence" provision of § 3202(4)(b), arguing that it violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment as well as the Privileges and Immunities Clause of Article IV. In addition, they sought damages pursuant to 42 U.S.C. § 1983, the Education for all Handicapped Children Act, (now the Individuals with Disabilities Education Act), 20 U.S.C. §§ 1401 et seq., and

---

**2.** The New York State Constitution mandates that the "legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." N.Y. Const., art. XI, § 1.

The legislature fulfilled this mandate by enacting New York Education Law § 3202. Subsection (1) provides that a school age child "is entitled to attend the public schools maintained in the district in which such person resides without the payment of tuition." N.Y.Educ.Law § 3202(1). Subsection (4) provides that:

Children cared for in free family homes and children cared for in family homes at board, when such family homes shall be the actual and only residence of such children and when such children are not supported and maintained at the expense of a social services district or of a state department or agency, shall be deemed residents of the school district in which such family home is located.

N.Y.Educ.Law § 3202(4)(b).

§ 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The district court held that the New York residency requirement as interpreted by the Commissioner violates the Equal Protection Clause because it does not further a substantial state interest. *Catlin v. Ambach,* 644 F.Supp. 161, 166–68 (N.D.N.Y.1986) (applying intermediate scrutiny reviewing Equal Protection Clause claim). Defendants appealed and this court vacated the district court's opinion on abstention grounds in order to allow New York State courts to rule on the meaning of "actual and only residence." *Catlin v. Ambach,* 820 F.2d 588, 591 (2d Cir.1987) (citing *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)).

On remand, the Catlins filed suit in state court and the defendants filed suit for payment of tuition; the suits were consolidated. The state trial court rejected the Commissioner's interpretation of § 3202(4)(b) and held that § 3202(4)(b) creates a class of children, including Dell, who are not subject to the common law presumption of residency with their biological parents. *Catlin v. Sobol,* 141 Misc.2d 169, 532 N.Y.S.2d 1006 (Albany Cty. S.Ct.1988). The intermediate appellate court held that the presumption of residency with biological parents did apply to § 3202(4)(b), but ruled that the Commissioner's determination that the presumption could only be rebutted by parental abandonment was absurd. The court found that on the facts in this case the presumption had clearly been rebutted, and thus ruled in favor of the Catlins. *Catlin v. Sobol,* 155 A.D.2d 24, 553 N.Y.S.2d 501 (3d Dep't 1990).

A divided New York Court of Appeals reversed, holding that the presumption that children reside with their parents was part of § 3202(4)(b): "this presumption may be overcome by showing that the parents or guardians have given up parental control and that the child's permanent domicile—i.e., the child's 'actual and only residence'—is within the district." *Catlin v. Sobol,* 77 N.Y.2d 552, 559, 569 N.Y.S.2d 353, 357, 571 N.E.2d 661 (1991). Thus, the court adopted the Com-

missioner's interpretation of "actual and only residence," which incorporates the presumption that children reside with their parents in the absence of parental abandonment. In addition, the court found the Commissioner had properly determined that the Catlins had not rebutted the presumption. Finally, the court held that the Commissioner's application of the statute was not arbitrary, capricious or without a rational basis.

The Catlins returned to federal court and reasserted their claim that § 3202(4)(b) violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment, the Privileges and Immunities Clause of Article IV, IDEA, and the Rehabilitation Act of 1973. The court granted the Catlins' motion for summary judgement on the grounds that the statute as applied violates the Due Process Clause; the court found that it does not violate the Equal Protection Clause. The court did not rule on the statutory claims.[3]

## II. DISCUSSION

### A. *Standard Of Review*

■ We review the grant of summary judgment *de novo* under the same standard applied by the district court. *Taggart v. Time Inc.,* 924 F.2d 43, 45–46 (2d Cir.1991). A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. at 2513. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994). With these principles in mind, we review the opinion below.

---

**3.** Plaintiffs also argued that defendants' actions violate the Privileges and Immunities Clause,

however the court did not reach this issue and the argument is not pursued on appeal.

## B. *The Due Process Claim*

■ In this case, we review New York Education Law § 3202(4)(b), which provides that "children cared for in family homes at board ... shall be deemed residents of the school district in which such family home is located" as long as that home is the "actual and only residence of such children." When the New York Court of Appeals considered the meaning of "actual and only residence," it held that based on the "sense in which the term [residence] has been traditionally understood by the courts" there is "a presumption that the residence of the child is the residence of the parents" which "may be overcome by proof showing that the parties have surrendered parental control and that such control is being exercised by some other person with whom the child [lives]." *Catlin v. Sobol,* 77 N.Y.2d 552, 558–59, 569 N.Y.S.2d 353, 356, 571 N.E.2d 661, 664 (1991) (internal citations and quotation marks omitted). The dissent also viewed the presumption as a rebuttable one. *Id.* at 564–65, 569 N.Y.S.2d at 359–60, 571 N.E.2d at 667–68.

The district court held that § 3202(4)(b) violates the Due Process Clause because it creates an "irrebuttable presumption" of non-residence for "minors who live apart from their biological parents and whose parents either exercise control over them or extend them financial assistance." *Catlin,* 881 F.Supp. at 801. The court reviewed the development of the irrebuttable presumption doctrine, which the Supreme Court has defined as those presumptions that, although not universally true, cannot be rebutted with competent evidence. *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

The district court explained that in *Vlandis* the Court considered a Connecticut statute that employed an irrebuttable presumption that a student who had an out-of-state address when he or she applied for admission to college was not a state resident; the presumption remained with the student for as long as he or she was a student.[4] The Court reasoned that it was not universally true that students who applied from out of state were not, and could not become, residents of Connecticut. *Id.* at 448, 93 S.Ct. at 2234. In addition, the Court explained that the state had reasonable alternative means for determining a student's actual residence. *Id.* at 451–52, 93 S.Ct. at 2236. Having determined that the irrebuttable presumption concerning residency was not universally true and that the state had reasonable alternative means for making a residency determination, the Court held that the statute was unconstitutional on due process grounds. *Id.* at 453, 93 S.Ct. at 2237.

Although it recognized that the irrebuttable presumption doctrine has been criticized and limited since *Vlandis,* the district court determined that the doctrine still applies in cases, such as this, in which residency requirements are challenged. *Catlin,* 881 F.Supp. at 803. The court reasoned that it was not universally true that if a child's parents lend him financial support or exercise control over him, the child resides with the parents. In addition, the court believed that a reasonable alternative means for making a residency determination would be to conduct a case-by-case analysis. Among the many factors that should be considered, the court specifically noted that the intent of the parents should be reviewed when the state makes a residency determination. Accordingly, it concluded that the irrebuttable presumption employed by the statute unconstitutionally deprives a seemingly bona fide resident of the benefits afforded to other resident children. *Catlin,* 881 F.Supp. at 806. The court held that in order to satisfy the Due Process Clause, the state must consider *all* factors relevant to the child's residence in deciding whether the child is entitled to a free education provided by the district in which the family home at board is located. *Id.* at 806 n. 20.

---

4. Actually the Court reviewed two parts of a statute in *Vlandis.* The statute provided that an unmarried student would be classified as a nonresident student if his or her legal address was outside of Connecticut for any part of the year prior to making an application for admission. The statute had a slightly different provision for married students: they were classified as out-of-state if their legal address at the time of application was out-of-state. *Vlandis,* 412 U.S. at 442–43, 93 S.Ct. at 2231–32 (citing Conn. Gen.Stat. Rev. § 10–329(b) (Supp.1969) as amended by § 126(a)(2) to (3)).

We disagree with the district court's application of the irrebuttable presumption doctrine, and with its conclusion that the statute violated the Due Process Clause. The district court believed the statute contained an irrebuttable presumption of non-residence for children who have not been abandoned by their parents. *See Catlin v. Sobol,* 881 F.Supp. 789 (N.D.N.Y.1995). However, the statute could just as easily be understood to contain a presumption that children reside with their parents; a presumption that could be rebutted by a showing of parental abandonment. *See Catlin v. Sobol,* 77 N.Y.2d 552, 569 N.Y.S.2d 353, 571 N.E.2d 661 (1991). These two interpretations of the statute illustrate one weakness of the irrebuttable presumption doctrine—every rebuttable presumption can be recharacterized as an irrebuttable one by redefining the relevant class.

Both commentators and courts have criticized this potentially circular doctrine. The following critique is useful in helping to focus our analysis:

> By masking substantive decisions in procedural language, the Supreme Court, in the irrebuttable presumption cases, confused due process and equal protection analysis. Irrebuttable presumption analysis allowed the Court to overturn legislative decisions without having to justify the use of judicial power as would an open use of substantive due process or equal protection analysis. The use of irrebuttable presumption language was a conceptually confused, if not dishonest, method of justifying independent judicial review of legislative classifications. The declining use of irrebuttable presumption analysis may evidence increasing willingness of justices to address directly the judicial role in reviewing legislatively created classifications.

2 Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law,* § 17.6 (1992). We in no way mean to suggest that the district court had anything but the best of intentions in attempting to interpret and apply the irrebuttable presumption analysis. We include the quotation in an effort to explain why we think a different mode of analysis is more appropriate.

The Supreme Court clarified the scope and purpose of the irrebuttable presumption doctrine in *Michael H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1988). In *Michael H.,* the Supreme Court emphasized that the irrebuttable presumption cases, including *Vlandis,* did not rest on procedural due process. Instead, the Court explained that "our 'irrebuttable presumption cases' must ultimately be analyzed as calling into question not the adequacy of procedures but—like our cases involving classifications framed in other terms—the adequacy of the 'fit' between the classification and the policy that the classification serves." *Id.* at 121, 109 S.Ct. at 2341 (citations omitted). In light of this language, to the extent the district court held that the statute was unconstitutional because it did not provide the Catlins with an adequate opportunity to argue that Dell really did reside in Edmeston, it was, perhaps understandably, misapplying the irrebuttable presumption doctrine. We limit our consideration to the claim that the statute violates substantive due process.

We first consider *Vlandis,* upon which the district court relied in determining that the statute was unconstitutional. In *Vlandis,* the Court reviewed prior cases which had held that an "irrefutable presumption was so arbitrary and unreasonable as to deprive [the plaintiff] of ... due process." *Vlandis,* 412 U.S. at 446, 93 S.Ct. at 2233 (discussing *Heiner v. Donnan,* 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932)). Thus, in *Vlandis* the Court held that statute violated due process not simply because it contained an irrebuttable presumption, but because the classification employed in the presumption was not rationally related to the desired goal. The Court essentially found that it was so arbitrary and unreasonable to presume that anyone who had an out-of-state address at the time they applied for admission was out-of-state for purposes of tuition throughout their tenure that the statute violated the Due Process Clause.

In contrast to the statute at issue in *Vlandis,* we do not believe that the statute under review in this case is so arbitrary and unreasonable as to deprive plaintiffs of substantive due process. The statute, as passed by the

legislature and interpreted by the state's highest court, presumes that children reside with their parents in the absence of parental abandonment. For the reasons discussed more fully below in our analysis of the Catlin's Equal Protection Clause claim, we hold that it is neither arbitrary nor unreasonable to presume that children reside with their parents in the absence of parental abandonment.

■ Here we simply explain that the legislature does not violate substantive due process when it passes a statute which does not interfere with a fundamental right or single out a suspect classification,[5] so long as the classification contained in the statute is rationally related to a desired goal. The legislature concluded that most children do actually reside with their parents in the absence of parental abandonment. It is not unreasonable for the legislature to determine residency based on this presumption for purposes of deciding who is entitled to a free education in the state.

In addition, in a case such as this, it would be difficult to determine residency in other ways. The traditional test for residency requires both physical presence plus intent to remain. *Martinez v. Bynum*, 461 U.S. 321, 330, 103 S.Ct. 1838, 1843, 75 L.Ed.2d 879 (1983). In the case of an adult, the individual's intent may be inferred by examination of numerous external factors such as automobile registration, licensing, mailing address, banking relationships and other things indicative of establishing residency. With a child, however, it is the intention of the parents on the child's behalf that must be determined and controls. *Id.* at 332 n. 14, 103 S.Ct. at 1844 n. 14. This task is made much more difficult when attempting to determine whether the residency of a child is separate from that of his parents. The inquiry is highly subjective. In this case, the Catlins appear to intend that Dell always remain in Edmeston for many reasons other than his educational situation. However, other parents in search of a good, free education for their child could easily represent their intentions in such a way as to suggest the child was a resident of New York when in fact the child was sent there solely for the purpose of obtaining a good, free, public education.

In this instance the legislature has decided to rely upon a presumption in lieu of an individual, specific inquiry; and the presumption is neither arbitrary nor unreasonable. The Due Process Clause does not require the state to inquire into and evaluate the intentions of the parents of every child who is present in the state, but whose parents reside out-of-state, to determine whether New York must provide the child with a free education. Accordingly, we hold that § 3202(4)(b) does not violate substantive due process because parental control, or lack thereof, is rationally related to determining the residency of a child for purposes of deciding whether New York will provide that child with a free education. The portion of the district court's decision which held that the statute violates the Due Process Clause is reversed.

### C. The Equal Protection Claim

■ The district court held that § 3202(4)(b) does not violate the Equal Protection Clause. Considering the issue of proper standard of review, the court reasoned that rational review was appropriate since neither a suspect class nor a fundamental right was at issue. *Catlin v. Sobol*, 881 F.Supp. at 799 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985); *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 1297 36 L.Ed.2d 16 (1973)). The court reviewed the statute as interpreted by the Commissioner, and found that it creates two classes of children: resident children who are entitled to a free education, and "resident children who are denied a free education because their biological parents reside in a different state and neither forswear their legal control over or financial responsibility for their children." 881 F.Supp. at 800. Having identified these two classes, the court then considered wheth-

---

5. See *infra* Part C, explaining that education is not a fundamental right and that the mentally retarded are not a suspect class.

er the residency requirement is rationally related to a legitimate government purpose.

The court explained that under the rational basis test, a statute will not be stricken merely because it does not in fact reach its intended result; instead the statute survives if the legislature could rationally have decided that the statute would fulfill the legislature's intended purpose. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981). The court reasoned that the legislature could have rationally believed that the residency requirement, including the presumption that children reside with their parents absent legal abandonment, would further its legitimate interests of reserving services for bona fide residents and preserving local control over educational services. *Id.* at 800–801 (citing *Martinez*, 461 U.S. at 328, 103 S.Ct. at 1842). Accordingly, it held that the New York Education Law § 3202(4)(b), as interpreted by the Commissioner, does not violate the Equal Protection Clause.[6]

■ We agree with the district court that the residency requirement of § 3202(4)(b), as interpreted by the Commissioner, does not violate the Equal Protection Clause. In *Martinez* the Supreme Court held that a bona fide residency requirement, appropriately defined and uniformly applied, is constitutional. 461 U.S. at 321, 103 S.Ct. at 1838.

Relying primarily on *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1981), plaintiffs argue that intermediate scrutiny is the appropriate standard of review because the statute limits access to an unusually important interest, education, for members of a disadvantaged group, the mentally retarded. However, in *Martinez* the Court explained that a bona fide residency requirement implicates no "suspect" classification, and as long as no fundamental right is

implicated, is subject only to rational review. *Id.* at 328 n. 7, 103 S.Ct. at 1842 n. 7 (noting that education is not a fundamental right and citing *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). The Supreme Court has been unwilling to apply intermediate scrutiny to a class of mentally retarded individuals. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985). Rather, the Court has limited intermediate review to claims based on gender, disabilities attendant to illegitimacy, and content-neutral restrictions that place an incidental burden on speech. *United States v. Virginia*, —— U.S. ——, ——–——, 116 S.Ct. 2264, 2291–93, 135 L.Ed.2d 735 (1996) (Scalia, J., dissenting) (citations omitted). Thus, we will uphold the statute as long as it is rationally related to a legitimate state interest.

We turn now to a consideration of the state's purported interests. As noted by the district court, the defendants have asserted two state interests that the Supreme Court has previously held to be legitimate, "protecting and preserving . . . the right of its own bona fide residents to attend [its schools for free]," *Martinez*, 461 U.S. at 327, 103 S.Ct. at 1841 (citing *Vlandis*, 412 U.S. at 452–53, 93 S.Ct. at 2236–37) and maintaining local control over public education. *Martinez*, 461 U.S. at 329, 103 S.Ct. at 1843. In addition, defendants offer a third interest, encouraging localities to permit family homes at board to exist in their school districts, which we also find to be legitimate.

The question, then, is whether the presumption that children reside with their parents in the absence of parental abandonment is rationally related to furthering these interests.[7] The legislative history indicates that the legislature believed § 3202(4)(b) would "relieve school districts of the obligation . . .

---

6. He noted that if the analysis involved a weighing of the equities, the Catlins would easily prevail in this case. He recognized that "in this case the presumption produces an extremely unfair and unwise result." *Catlin*, 881 F.Supp. at 801.

7. We note that the presumption that children reside with their parents in the absence of parental abandonment applies to all children; it is not

limited to children who live in family homes at board. *Cf. Nancy M. v. Scanlon*, 666 F.Supp. 723 (E.D.Pa.1987) (striking statute that distinguished between nonresident children living in paid foster homes and nonresident children living in institutions or uncompensated foster homes because it was not a uniformly applied residency requirement and thus violated the Equal Protection Clause).

to bear the financial burden of educating nonresident children." *Catlin v. Sobol,* 77 N.Y.2d 552, 561, 569 N.Y.S.2d 353, 357, 571 N.E.2d 661 (1991) (citing Bill Jacket, L. 1973, ch. 867, Mem. in Support of State Dep't of Educ.). Defendants assert that their interest in maintaining local control over public education is furthered by relieving school districts of the additional financial burden of paying tuition for nonresident students, thereby preserving the quality of the local public schools. *See Catlin v. Sobol,* 881 F.Supp. at 800–01. Similarly, "the legislature chose this home district financing scheme in order to avoid undue financial burdens on school districts containing family homes." *Id.* (citing *Jeter v. Ellenville Cent. School District,* 41 N.Y.2d 283, 392 N.Y.S.2d 403, 360 N.E.2d 1086 (1977)). We conclude that a presumption that certain children who have not been abandoned by their parents reside with their parents is rationally related to furthering these legitimate state interests.

We recognize that Dell has spent all of his life with the Condes and for all practical purposes their home is his home. We also agree with the district court that the Catlins faced a difficult situation when they decided to leave New York.[8] While it may be argued that the facts in this case indicate that the presumption is bad public policy,[9] the statute as interpreted by the Commissioner does not violate the Equal Protection Clause.

**8.** The court catalogued the following interests for the plaintiffs: Dell has always lived in Edmeston; the Condes' home is his home and they are his family; Dell was not sent to Edmeston for the primary purpose of attending school. The court explained that the Catlins had three, equally bad, choices in the face of the law: 1) uproot Dell from the home he has always known and move him to Massachusetts to ensure that he receives a free education; 2) surrender legal control over Dell so that the Conde's home would be his actual and only residence; or 3) take Dell out of school. *Catlin,* 881 F.Supp. at 800. However, we think the Catlins had at least three choices in addition to those mentioned by the district court: 1) attempt to get Massachusetts to pay for Dell's education in New York; 2) pay for Dell's education themselves; or 3) remain in New York.
The record suggests that the Nantucket School District told the Catlins that Massachusetts law would not permit them to fund an out-of-state education. It is not clear whether this is an accurate recital of Massachusetts law, nor is it

## D. *The Statutory Claim—IDEA*

■ Plaintiffs argue that the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1601 *et seq.,* and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provide an alternative basis for requiring defendants to provide Dell with a free public education. In short, plaintiffs argue that IDEA and the Rehabilitation Act require states to provide a free education to any child within the state, regardless of the child's residence or domicile. In support of this argument, they point to several sections of the statutes which suggest that Congress meant to ensure that every handicapped child within the state receives a free and appropriate public education ("FAPE") without regard to whether or not they are residents of or domiciled in the state. After close study of the statute, the implementing regulations, and the Department of Education's opinion letters on this question, we find that plaintiffs' position is simply not supportable; the IDEA and § 504 of the Rehabilitation Act themselves contain a presumption that children reside with their parents and it is the parents' resident district which is required to fund the child's education, wherever the child lives.

In an effort to increase access to education for handicapped children, Congress passed IDEA, a statute which provides federal funding to states to help defray the costs of educating these children. In order to receive federal money, the state must submit a plan

clear that the Catlins pursued this option any further than the initial inquiry. The record does not reflect whether the Catlins could have stayed in New York, or whether they could afford to pay for Dell's education themselves. We recognize that these options may or may not have existed for the Catlins, and that they certainly would not exist for a poor family forced to move for economic reasons. Perhaps the state legislature will revisit this presumption in light of the effects it could have on impoverished families.

**9.** Plaintiffs and several of the other courts that have considered this case stress that this presumption encourages parents to abandon their children in order to ensure that they receive a free education in the only home they have known. Of course, others might argue that the presumption has just the opposite effect—encouraging parents to take their children with them when they leave New York.

which demonstrates that there is a state policy in effect which assures that all handicapped children have a right to a FAPE. 20 U.S.C. § 1412(1). States must provide a FAPE "for all children with disabilities between the ages of three and eighteen *within the State . . .*" 20 U.S.C. § 1412(2)(B). Finally, the implementing regulations of the Rehabilitation Act indicate that a state must provide a FAPE to any handicapped child who is *in* the recipient's jurisdiction. "The word 'in' encompasses the concepts of both domicile and actual residence. . . . And in no case may a recipient refuse to provide services to a handicapped child in its jurisdiction because of another person's or entity's failure to assume financial responsibility." App. A to 34 C.F.R. Part 104, subpart D at 23. On its face, this language seems to support plaintiffs' claim that defendants are required to provide Dell with a FAPE because he is in/within the district.

Close consideration reveals, however, that while every district is required to make a FAPE available to every handicapped child within the district, the financial obligation for that education falls on the parents' home district. We find support for this interpretation both in the language of the statute itself and in the opinion letters of the Department of Education, Office of Special Education Programs.

First, the statute provides:

> The State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for children with disabilities within the State, *including all such programs administered by any other State or local agency,* will be under the general supervision of the persons responsible for educational programs for children with disabilities in the State educational agency. . . .

20 U.S.C. § 1412(6) (emphasis added). Requiring state education agencies to oversee the education of all handicapped children within the state, even when that education is being administered by another state or local agency, indicates that the statute contemplates situations in which one district will be financially responsible for a child's education

while another district will actually educate the child. Such an arrangement would not arise if the child were considered to be a resident of the district in which he or she was being educated. Thus, the statute assigns ultimate responsibility, including financial responsibility, to the home district and state—the place where the parents reside. *See also Wise v. Ohio Dept. of Educ.*, 80 F.3d 177, 182–83 (6th Cir.1996) ("[S]tates' obligation under IDEA to provide a free public education to all children with disabilities 'within the state' includes those children who are receiving services in another state but whose parents reside in the state. . . . The parents' [local education agency] also retains financial responsibility for the cost of the services provided by the other state or facility.").

Several opinion letters from the Office of Special Education of the Department of Education also demonstrate that financial responsibility for a handicapped child's education remains with the parents' home district, regardless of where the child lives. For example, in Letter to McAllister, 21 Indiv. with Disabilities Educ.L.Rep. 81 (1994), the following question was posed:

> Where does responsibility lie for providing a free appropriate public education in the situation where an out-of-state public agency places a child across state boundaries but retains custody . . . ?

The Office of Special Education responded that

> Under Part B [of the IDEA], each State and its local school districts must make a free appropriate public education (FAPE) available to all children with specified disabilities in mandated age ranges residing within the State. 20 U.S.C. § [1412(2)]. It is residence that creates the duty under the statute and regulations, not the location of the child or school. As interpreted by this Office, a child is a resident of the State which: (1) their parent or guardian is a resident of; or (2) the child is a ward of. Therefore, under Part B, when a child with a disability is placed or referred by a State [agency], whether for education or treatment reasons . . . whether within the State or outside the State, the [State Edu-

cation Agency] in the State in which the child resides is responsible for ensuring that FAPE is made available to the child during the course of the child's placement at the out-of-State facility.

*Id.*[10] Under the interpretation set forth above, the child's residence is that of his parents, and the parents' district is responsible for funding the child's education.

This case, of course, is somewhat more complicated because Dell was placed in the program in Edmeston, New York when his parents resided in Bedford, New York. The problem of who would fund Dell's education arose only after his parents moved to Massachusetts. The Office of Special Education has recently issued an opinion letter dealing with a virtually identical situation, which because of the striking similarity is quoted at some length below. The question was posed as follows:

> The following situation has arisen in Massachusetts on a number of recent occasions. The parents (or guardian) who reside in Massachusetts have a child with special needs who has been placed in a residential program by a Massachusetts school committee. The parents (or guardian) then move to another state. The child remains in the residential special education program. The child is not a ward of the state and the parents (or guardian) remain in contact with the child and the staff at the child's residential program. The parents take no steps to have the child evaluated by their new school system.
>
> Does the rationale of your [Letter to McAllister] apply to these circumstances? In other words, can we conclude that in the circumstances described above, once the parents move out of state, Massachusetts is no longer responsible for the child's special education program and that the new state of residence of the parents becomes responsible for insuring that the child receives a free appropriate public education?

Letter to Moody, 23 Indiv. with Disabilities Educ.L.Rep. 833 (1995). The Office of Spe-

cial Education reiterated the residency rules described in the Letter to McAllister and then explained that:

> it appears that the student was placed by an educational agency in Massachusetts for educational reasons in a residential facility located in Massachusetts. Since the parents have established residency in State B, the student and parents' residency are presumed to be the same, that is, State B. Therefore, Massachusetts would not continue to be responsible for ensuring the provision of FAPE to the student. . . .

*Id.* Given this response, it is evident that once the Catlins established residency in Massachusetts, Dell would also be presumed to be a resident of Massachusetts, and Massachusetts would become responsible for seeing that Dell received a FAPE. Contrary to plaintiffs' assertions, both the IDEA and the Rehabilitation Act presume that the child's residence is that of his parents, unless the child has been abandoned and is a ward of the state, and it is that home district which is required to provide the child with a FAPE. Thus, under the IDEA and § 504 of the Rehabilitation Act, Dell is presumed to reside with his parents in Massachusetts, and it is Massachusetts that is responsible for providing Dell with a FAPE. We find no merit in plaintiffs' contention that § 3202(4)(b) is inconsistent with the IDEA and § 504 of the Rehabilitation Act of 1973.

## CONCLUSION

We find that New York Education Law § 3202(4)(b) does not violate the Due Process Clause. Since we find no violation of the Equal Protection Clause, the IDEA or the Rehabilitation Act of 1973, there is no alternative ground for affirming the district court's ruling. Accordingly, the decision of the district court is reversed to the extent it held that § 3202(4)(b) violated the Due Process Clause.

---

**10.** The Department of Education's Office of Civil Rights, rather than the Office of Special Education, is responsible for enforcing Section 504 of the Rehabilitation Act of 1973. The Letter to McAllister interprets the IDEA, but explains that the Office of Civil Rights has the same policy concerning residency with respect to Section 504.